PER CURIAM.
Wayne Morrow filed a permissive appeal pursuant to Rule 5, Ala. RApp. P., from the Montgomery Circuit Court’s order denying Morrow’s request for a judgment declaring that the $100,000 cap on damages in § 11-47-190, Ala.Code 1975, applies to Morrow, a municipal employee who was sued in his individual capacity. We affirm the trial court’s order.

Facts and Procedural History

In January 2009, Alice Yu sought to have Alabama Power Company (“Alabama Power”) restore electrical service in her name at a commercial building she was leasing at 1940 N. Ripley Street in Montgomery (“the premises”). Because the premises had been without power for approximately eight months, the City of Montgomery (“the City”) had to perform an electrical inspection of the premises and clear the premises for service before Alabama Power could restore electrical service. On January 29, 2009, Morrow, who was an electrical inspector with the City, inspected the premises. Morrow stated that there was a raised concrete pad at the back of the building and that there was an air-conditioning system on the raised concrete pad. Morrow also stated that there was a chain-link fence around the entire concrete pad, that the entry to the system was by a locked gate, and that the top of the fence was also enclosed by a chain-link fence that went over the air-conditioning system and was secured to the building. Morrow stated that, above the concrete pad, there was an electrical source that could be used to install a floodlight (“the electrical source”) and that the electrical source was covered by a circular, weatherproof junction box. Morrow further stated that he did not find any electrical defects or any dangerous conditions with regard to the electrical system and that he approved the premises for the restoration of power. On January 30, 2009, Alabama Power restored power to the premises.
On June 30, 2009, Keandarick Russell, a minor, was staying with his great-grand *766 mother, who lived next door to the premises. Russell, who was playing on the concrete pad on which the air-conditioning system was located, was electrocuted when he came in contact with the chain-link fence. When the incident occurred, the gate in the fence was broken, the top part of the enclosure had been rolled back and was resting against the wall of the building, and the wires from the electrical source were not covered by a junction box. The wires from the electrical source had come in contact with a portion of the fence, and, as a result, the fence had become electrified and Russell was electrocuted-when he touched the fence.
On June 17, 2010, Shameka Caldwell, as Russell’s mother and next friend, filed a wrongful-death action against multiple defendants, including fictitiously named defendants. On September 2, 2010, Caldwell amended her complaint to substitute Morrow and Yu for two of the fictitiously námed defendants. In the amended complaint, Caldwell alleged that Morrow had negligently, recklessly, and/or wantonly inspected the premises and had negligently, recklessly, and/or wantonly allowed electrical service to be restored to the premises. In his answer, Morrow asserted that he was entitled to State immunity, to State-agent immunity, and to qualified immunity.
On March 15, 2011, Caldwell filed a second amended complaint. In the second amended complaint, Caldwell stated that Morrow “is sued herein in his individual capacity for his individual acts of negligence and wantonness which caused or contributed to cause the death of Keandar-ick Russell.” Also, in her second amended complaint, Caldwell alleged that Morrow had acted “negligently and/or recklessly and/or wantonly and/or maliciously and/or willfully and/or with fraudulent conduct and/or in bad faith and/or intentionally and/or beyond his authority and/or under a mistaken interpretation of the law” when he inspected the premises; that he had been “negligent and/or wanton and/or reckless and/or malicious and/or willful and/or [had acted] with fraudulent conduct and/or in bad faith and/or intentionally and/or beyond his authority and/or under a mistaken interpretation of the law” when he allegedly did not follow proper protocol and procedures for inspecting the premises for electrical service; and that Morrow had negligently, recklessly, and/or wantonly allowed electrical service to be restored to the premises. Finally, in the second amended complaint, Caldwell stated that Morrow had “acted negligently and/or wantonly in this case and this action is brought against him specifically in his individual capacity.” In his answer to the second amended complaint, Morrow again alleged that he was entitled to State immunity, to State-agent immunity, and to qualified immunity.
On July 1, 2011, Morrow filed a motion for a summary judgment in which he argued that he was entitled to State-agent immunity under Ex parte Cranman, 792 So.2d 392 (Ala.2000).[1] In her brief in opposition to Morrow’s summary-judgment motion, Caldwell argued that she had presented evidence that created a reasonable inference that Morrow was not entitled to State-agent immunity under Cranman because, she says, he “failed to enforce the [National Electrical Code] as he was required and failed to follow the dictates of the Electrical Ordinance of the City of Montgomery in a willful manner and in complete disregard for the safety of others.” The trial court denied Morrow’s summary-judgment motion. Subsequently, Morrow filed a petition for a writ of *767 mandamus with this Court, in which he asked this Court to compel the trial court to enter a summary judgment in his favor on the basis of State-agent immunity. This Court denied the petition without ordering an answer and briefs. (No. 1101312, August 31, 2011.)
On May 25, 2012, Morrow filed a motion asking the trial court for “a judgment declaring the statutory limitations of liability of $100,000, pursuant to Ala.Code 1975, § 11-47-190, are applicable to Defendant Wayne Morrow in this case.” Caldwell filed a response to Morrow’s request for a declaratory judgment in which she contended that the statutory cap on recovery set forth in § 11-47-190 for damages against a municipality would not apply to the claims in this case because the claims were brought against Morrow in his individual capacity and because she alleged that Morrow had acted recklessly, wantonly, or willfully.
On June 27, 2012, the trial court entered an order denying Morrow’s request for a judgment declaring § 11^47-190 applicable in which it stated, in pertinent part:
“The law concerning caps on damages against municipalities and their employees appears to be unsettled at the present time. As best this Court can discern the law, this Court would find the issue in favor of [Caldwell] and holds that the caps would not apply to damages attributable to wanton conduct by Morrow when sued in his individual capacity.”
On June 28, 2012, Morrow filed a motion in which he requested that the trial court “certify the question of the extent to which any individual capacity claim against Morrow is limited to $100,000 under Ala.Code § 11-47-190, and to stay the proceedings pending the filing of a petition for interlocutory appeal, pursuant to Rule 5, Ala. R.App. P.” The trial court provided the certification necessary for an interlocutory appeal pursuant to Rule 5, Ala. RApp. P.
Subsequently, Morrow filed a petition for permissive .appeal in this Court. This Court granted the petition.

Discussion

The trial court’s certification included the following controlling question of law for permissive appeal:
“Whether the claims against a municipal employee, sued in his individual capacity, are subject to the statutory cap of Ala.Code 1975, § 11-47-190, when those claims fall within the ‘willful or wanton’ exception to the doctrine of State-agent immunity, under Ex parte Cranman, 792 So.2d 392 (Ala.2000).”
This case presents a pure question of law. This Court has held: “ ‘ “[0]n appeal, the ruling on a question of law carries no presumption of correctness, and this Court’s review is de novo.”’ Rogers Found. Repair, Inc. v. Powell, 748 So.2d 869, 871 (Ala.1999) (quoting Ex parte Graham, 702 So.2d 1215, 1221 (Ala.1997)).” City of Prattville v. Corley, 892 So.2d 845, 847 (Ala.2003).
In answering the trial court’s question, we are guided by the following principles of statutory construction:
‘“In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature.’ DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275 (Ala.1998).
“ ‘ “Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly *768 expressed intent of the legislature must be given effect.” ’
“Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So.2d 293, 296 (Ala.1998) (quoting IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)).”
City of Prattville v. Corley, 892 So.2d at 848.
“In Archer v. Estate of Archer, 45 So.3d 1259, 1263 (Ala.2010), this Court described its responsibilities when construing a statute:
“ ‘ “ ‘[I]t is this Court’s responsibility in a case involving statutory construction to give effect to the legislature’s intent in enacting a statute when that intent is manifested in the wording of the statute....
“ ‘ “ ‘[I]f the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.’ ” ’” ... In determining the intent of the legislature, we must examine the statute as a whole and, if possible, give effect to each section.’
“ ‘ “Ex parte Exxon Mobil Corp., 926 So.2d 303, 309 (Ala.2005). Further,
“ ‘ “ “when determining legislative intent from the language used in a statute, a court may explain the language, but it may not detract from or add to the statute.... When the language is clear, there is no room for judicial construction....’
“ ‘ “Water Works & Sewer Bd. of Selma v. Randolph, 833 So.2d 604, 607 (Ala.2002).” ’
“(Quoting Ex parte Birmingham Bd. of Educ., 45, So.3d 764, 767 (Ala.2009).) Similarly, in Lambert v. Wilcox County Commission, 623 So.2d 727, 729 (Ala.1993), the Court stated:
“ ‘ “The fundamental rule of statutory construction is that this Court is to ascertain and effectuate the legislative intent as expressed in the statute.... In this ascertainment, we must look to the entire Act instead of isolated phrases or clauses ... and words are given their plain and usual meaning. ... Moreover, just as statutes dealing with the same subject are in pari materia and should be construed together, ... parts of the same statute are in pari materia and each part is entitled to equal weight.” ’
“(Quoting Darks Dairy, Inc. v. Alabama Dairy Comm’n, 367 So.2d 1378, 1380-81 (Ala.1979).)”
First Union Nat’l Bank of Florida v. Lee Cnty. Comm’n, 75 So.3d 105, 111-12 (Ala.2011).
Morrow argues that the plain language of § 11-47-190 clearly dictates that the $100,000 statutory cap on recovery would apply to the claims against him even though he is being sued in his individual capacity and even though Caldwell is alleging that he acted recklessly, willfully, and wantonly. This Court has not yet addressed whether the statutory cap on recovery set forth in § 11^7-190 would apply to limit the liability of municipal employees sued in their individual capacity.[2]
*769 Section 11 — 47—190, Ala.Code 1975, provides:
“No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, or unless the said injury or wrong was done or suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways, or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body and whenever the city or town shall be made liable for damages by reason of the unauthorized or wrongful acts or negligence, carelessness, or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account by the party so injured. However, no recovery may be had under any judgment or combination of judgments, whether direct or by way of indemnity under Section ll-k7-2k, or otherwise, arising out of a single occurrence, against a municipality, and/or any officer or officers, or employee or employees, or agents thereof, in excess of a total $100,000 per injured person up to a maximum of $300,000 per single occurrence, the limits set out in the provisions of Section 11-93-2 notwithstanding.”
(Emphasis added.)
The first sentence of § 11-47-190 recognizes the principle that municipalities are generally immune from suit (“No city or town shall be liable for damages....”) and then provides an exception for actions seeking damages for the negligent acts of the agents or employees of municipalities (“unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee”). There is no exception in the statute allowing an action against a municipality for the wanton or willful conduct of its agents or employees. Cremeens v. City of Montgomery, 779 So.2d. 1190, 1201 (Ala.2000) (“A municipality cannot be held liable for the intentional torts of its employees. See Ala.Code 1975, § 11-47-190.... ”); Town of Loxley v. Coleman, 720 So.2d 907, 909 (Ala.1998) (“This Court has construed § 11 — 47—190 to exclude liability for wanton misconduct.”).
Further, this Court has interpreted the first sentence of § 11-47-190 as serving
“to limit municipality liability to two distinct classes. In the first classification, *770 the municipality may be liable, under the doctrine of respondeat superior, for injuries resulting from the ■wrongful conduct of its agents' or officers in the line of duty. In the second classification, the municipality may be liable for injuries resulting from its failure to remedy conditions created or allowed to exist on the streets, alleys, public ways, etc., by ⅛ person or corporation not related in service to the municipality.’ Isbell v. City of Huntsville, 295 Ala. 380, 380 So.2d 607, 609 (1976); City of Birmingham, v. Carle, 191 Ala. 539, 542, 68 So. 22, 23 (1915). The municipality must have actual or constructive notice of the condition. If the claim is predicated under the second classification, then the third party shall also be liable. Isbell, supra, 330 So.2d at 609, Carle, 191 Ala. at 541-42, 68 So. at 23.”
Ellison v. Town of Brookside, 481 So.2d 890, 891-92 (Ala.1985).
The second sentence of § 11^47-190, which provides a cap on any recovery on a judgment resulting therefrom, begins with the word “however.” The use of the sentence adverb (or conjunctive adverb)[3] “however” indicates that the second sentence modifies the preceding sentence. Thus, it sets a limit on the “recovery” stemming from a “judgment” or “judgments” that result from the liability allowed by the exception contained in the first sentence. So, while the first sentence provides that a municipality may be liable for the negligent acts of its agents or employees, the second sentence, by starting with the word “however,” limits the “recovery” from any such resulting “judgment.” In other words, the “recovery” that is capped to $100,000 by the second sentence is the recovery for any liability in a negligence action allowed by the first sentence. Thus, when the second sentence of § 11-47-190 is read in light of the first sentence, it is clear that the second sentence is meant to be a limitation on the amount of damages a person or corporation may recover from a municipality in those limited situations in which the municipality may be held liable.
Morrow advances a different reading of the second sentence of § 11^47-190. Specifically, he points to the language that “no recovery may be had under any judgment ... against ... any ... employee ... in excess of’ $100,000 and contends that this provides a blanket cap on any damages awarded against any municipal agent or employee in any action. In other words, he would interpret the second sentence as limiting recovery from actions that are different from the actions allowed by the first sentence, including recovery in actions alleging wanton or willful conduct against municipal employees in their individual capacity. This reading of § 11-47-190 improperly disconnects the second sentence from the context of the entire section and fails to acknowledge the conjunctive adverb “however” that links the second sentence to, and causes it to modify, the first sentence.
Further, it is clear that the reference to judgments against “any officer or officers, or employee or employees, or agents” in the second sentence is made because of the need to be clear that municipal liability is limited to $100,000 even where that liability is a function of an action against one of those persons in their official capacity or of the special statutory indemnity imposed on a municipality by 11-47-24, Ala.Code 1975. As to the former, in Smitherman v. Marshall County Commission, 746 So.2d 1001, 1007 (Ala.1999), this Court held that *771 “claims against county commissioners and employees in their official capacity are, as a matter of law, claims against the county and subject to the $100,000 cap contained in § ll-93-2[, Ala.Code 1975, capping damages against governmental entities at $100,000].” Similarly, claims that are brought against municipal employees in their official capacity are also, as a matter of law, claims against the municipality.
By the same token, because of the need to be clear that municipal liability is limited to $100,000 even where that liability is a function of an action against a municipal employee in his or her official capacity or of the special statutory indemnity imposed on the city by 11-47-24, the second sentence of § 11-47-190 specifically addresses “judgments ... by way of indemnity under Section 11-47-24” that arise from judgments against “dny officer or officers, or employee or employees, or agents” of a municipality.
Section 11-47-24, Ala.Code 1975, provides:
“(a) Whenever any employee of a municipal corporation of the State of Alabama shall be sued for damages arising out of the performance of his official duties, and while operating a motor vehicle or equipment engaged in the course of his employment, such government agency shall be authorized and required to provide defense counsel for such employees in such suit and to indemnify him from any judgment rendered against him in such suit. In no event shall a municipal corporation of the state be required to provide defense and indemnity for employees who may be sued for damages arising out of actions which were either intentional or -willful or wanton.
“(b) All municipal corporations of the State of Alabama are hereby authorized to contract at governmental expense for policies of liability insurance to protect employees in the course of their employment.”
As this Court noted in Benson v. City of Birmingham, 659 So.2d 82, 87 (Ala.1995), by amending. § 11-47-190 in 1994 to add the second sentence, the legislature clarified the fact that the limitation on recovery against a municipality also limits the amount for which a municipality may indemnify a negligent employee.
Finally, no language in § 11-47-190 suggests that it is intended to apply to claims against municipal employees who are sued in their individual capacities. Rather, when the statute is read as a whole, it is clear that the limitation on recovery in the second sentence of § 11-47-190 is intended to protect the public coffers of the municipality, not to protect municipal employees from claims asserted against them in their individual capacity.[4]

Conclusion

Because the plain language of § 11-47-190 does not limit the recovery on a claim against a municipal employee in his or her individual capacity, the $100,000 statutory cap on recovery set forth in § 11-47-190 would not apply to Caldwell’s claims against Morrow. Therefore, the trial court properly denied Morrow’s request for a judgment declaring that it would. Accordingly, we affirm the trial court’s order.
AFFIRMED.
STUART, BOLIN, PARKER, MAIN, WISE, and BRYAN, JJ., concur.
*772 MURDOCK, J., concurs specially.
MOORE, C.J., concurs in the result.

. The test set forth in Cranman, a plurality opinion, was subsequently adopted by a majority of the Court in Ex parte Butts, 775 So.2d 173 (Ala.2000).

. In Sutiles v. Roy, 75 So.3d 90 (Ala.2010), this Court held that, although the statutory cap on recovery against "a governmental entity” set forth in § 11-93-2, Ala.Code 1975, applied to an action against a municipal employee sued in his official capacity, it did not apply to an action against a municipal employee sued in his individual capacity. With regard to § 11-47-190, this Court noted:
"Suttles and Homewood also state in the 'summary of argument' and the 'conclusion' portions of their brief that the plain language of § 11-47-190 provides that no recovery may be had against an employee *769 of a municipality in excess of $100,000, regardless of whether the employee is sued in his individual or official capacity. No explanation or elaboration on this argument is found in the initial brief, and no authority is cited supporting their interpretation of the Code section. Therefore, we decline to address this issue."
75 So.3d at 99 n. 5 (emphasis added). Additionally, when this Court overruled Suttles and Homewood's application for rehearing, Justice Shaw issued a special writing concurring specially and stating:
"In the third issue in their brief on rehearing, Homewood and Suttles contend that, if Roy is able to assert individual-capacity claims against Suttles, then any damages award must be capped at $100,000 by Ala. Code 1975, § 11-47-190. As noted in the opinion on original submission, we have refused to address this issue based on the lack of argument regarding it in Homewood and Suttles’s initial brief. Because we do not address this issue, it must wait to be resolved on another day."
75 So.3d at 104 (emphasis added).

. A sentence or conjunctive adverb "is a word that modifies a whole previous statement.” Frederick Crews, The Random House Handbook 403 (6th ed. 1992).

. Under § 1 l-47~24(a), the City would not be required to indemnify Morrow for any judgment against him that was based on damage resulting from his intentional, willful, or wanton conduct.