REL: 9/26/2014

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2014

———————————

### 1121006

———————————

Alabama Municipal Insurance Corporation

v.

Willie Allen

Appeal from Madison Circuit Court
(CV-08-901036)

———————————

### 1121014

———————————

Alabama Municipal Insurance Corporation

v.

Amber Holmes

**Appeal from Madison Circuit Court**
**(CV-09-901297)**

_____

**1121038**

_____

**City of Madison**

**v.**

**Amber Holmes**

**Appeal from Madison Circuit Court**
**(CV-09-901297)**

_____

**1121039**

_____

**City of Madison**

**v.**

**Willie Allen**

**Appeal from Madison Circuit Court**
**(CV-08-901036)**

PER CURIAM.

The issue in these four appeals is whether the $100,000 statutory cap of § 11-47-190, Ala. Code 1975, applies when a peace officer, acting outside his employment, is sued in the officer's individual capacity.

2

1121006; 1121014; 1121038; 1121039

<u>Facts and Procedural History</u>

On January 6, 2008, Amber Holmes and Willie Allen were injured in an automobile accident when the car they were in was struck by a police patrol car driven by Richard Alan Beard. At the time of the accident, Beard, who was employed by the City of Madison Police Department as a patrol officer, was on his way to work and was late for his shift. The City of Madison ("the City") allows its police officers to drive their patrol cars to their homes, to work, and to gym facilities (the City pays officers for the time they spend exercising). Beard was traveling 103 miles per hour in a 45-mile-per-hour zone at the time of the accident. A drug test performed on Beard after the accident indicated the presence of marijuana in his system.

The City had an automobile-insurance policy with Alabama Municipal Insurance Corporation ("AMIC"). The patrol car assigned to Beard was included in the policy. The policy provides:

"1. Who is an Insured

"The following are 'insureds':

"a. You for any covered 'auto'.

3

1121006; 1121014; 1121038; 1121039

"b. Anyone else while using with your permission a covered 'auto' you own, hire or borrow ...."

On October 28, 2008, Allen sued Beard individually, alleging negligence and wantonness. Allen sued State Farm Mutual Insurance Company ("State Farm"), seeking uninsured/underinsured-motorist benefits because the car driven by Allen and owned by Holmes was insured by State Farm. Allen also sued his car insurer, Government Employee Insurance Corporation, seeking uninsured/underinsured-motorist benefits. On November 30, 2009, Holmes sued Beard individually, alleging negligence and wantonness.[1] Holmes also sued her insurer, State Farm, seeking uninsured/underinsured-motorist benefits.[2]

On December 30, 2009, State Farm filed a cross-claim against Beard and purported o file a cross-claim against the City seeking reimbursement and subrogation for medical benefits paid to Allen. On November 22, 2010, the City filed a motion to dismiss the cross-claim, asserting that it was not named in the complaint and that, therefore, no cross-claim

---

[1]Neither Allen's nor Holmes's complaint alleged that Beard was acting in the line of duty at the time of the accident.

[2]These proceedings were stayed while criminal charges against Beard were pursued. Subsequently, the stay was lifted.

4

1121006; 1121014; 1121038; 1121039

could be filed against it. On January 14, 2011, the trial court granted the City's motion to dismiss the cross-claim. On September 20, 2011, Beard filed a motion for a partial summary judgment (on the issue of damages in both actions, arguing that the $100,000 damages cap of § 11-47-190, Ala. Code 1975, and § 11-93-2, Ala. Code 1975, read in conjunction with the indemnification provisions of § 11-47-24, Ala. Code 1975, applied because he was on duty when the accident occurred. On November 7, 2011, the trial court consolidated the actions for trial. The trial court denied Beard's summary-judgment motion seeking to apply the damages cap. Beard filed a renewed motion for a partial summary judgment before trial, again arguing that the $100,000 damages cap applied in both Allen's and Holmes's actions against him. The trial court denied the renewed motion for a partial summary judgment.

Following ore tenus proceedings, the trial court, on September 25, 2012, entered a judgment in favor of Allen and against Beard in the amount of $700,000 and a separate judgment in favor of Holmes and against Beard in the amount of $1,100,000. In both orders, the trial court stated:

5

1121006; 1121014; 1121038; 1121039

> "Ala. Code 1975, Section 11-93-2, limits the recovery of damages against a governmental entity to $100,000.00 for bodily injury for one person in any single occurrence. However, under the language of the statute and the facts of this case, the limitation on recovery does not apply to this judgment against the individual defendant, Richard Alan Beard."

On November 6, 2012, the City and AMIC filed a joint motion to intervene in the consolidated action. In their motion, the City and AMIC argued that both the City and AMIC were the real parties in interest relating to the collection of the judgment because Beard was employed by the City and, at the time of the accident, was driving a car issued to him by the City and insured by AMIC. AMIC admitted that Beard was an insured under its policy with the City. That same day, the City filed a motion to deposit $100,000 with the court to satisfy the judgment entered in favor of Allen and $100,000 to satisfy the judgment entered in favor of Holmes. Specifically, the City stated:

> "The Final Judgment entered against Defendant Beard was based on his negligence while acting within the scope of his duties and operating a motor vehicle as a police officer for the City of Madison. Thus, pursuant to § 11-47-24, [Ala. Code 1975,] the City of Madison is required to indemnify Defendant Beard for the judgment entered against him based upon his negligence while operating a motor vehicle engaged in the course of his employment. However,

6

pursuant to § 11-47-190, [Ala. Code 1975,] when indemnifying an employee for a judgment entered against him pursuant to § 11-47-24, the City cannot be required to pay an amount in excess of $100,000 per injured person. See Ala. Code [1975,] § 11-47-190; Benson v. City of Birmingham, 659 So. 2d 82 (Ala. 1995). Therefore, the cap in § 11-47-190 applies, and the City of Madison can only be required to pay up to $ 100,000 of the final judgment entered against Defendant Beard.

"Furthermore, the cap on damages in § 11-47-190 applies to the judgment entered against Defendant Beard. As previously stated, § 11-47-190 provides, 'no recovery may be had under any judgment or combination of judgments, whether direct or by way of indemnity under Section 11-47-24, or otherwise, arising out of a single occurrence against a municipality, and/or any officer or officers, or employee or employees, or agents thereof, in excess of a total of $100,000.' Ala. Code [1975,] § 11-47-190. As the Alabama Supreme Court explained in Benson v. City of Birmingham, '[t]he need to preserve the public coffers does not disappear simply because the plaintiff has proceeded against a negligent employee of the municipality rather than, or in addition to, proceeding directly against the municipality.' 659 So. 2d at 86. The legislature affirmed this principle when it passed § 11-47-190, capping damages against municipalities as well as the officers, employees, and agents of municipalities. See id. at 87. Defendant Beard was acting as a City of Madison police officer at the time of the incident made the basis of this cause of action. Therefore, the $100,000 cap contained in § 11-47-190 applies to the Final Judgment entered against Defendant Beard.

"On October 25, 2012 the City tendered the sum of $100,000.00 payable to Willie Allen to satisfy this judgment. Counsel for Allen rejected this payment and refused the tender. Attached hereto,

labeled as Exhibit A hereof and made a part hereof by reference, is a copy of the hand-delivered letter with attached check.

"Therefore, the City of Madison wishes to deposit with this Court the sum of $100,000.00 in damages as full and final satisfaction of this judgment.

"Pursuant to Rule 67 of the Alabama Rules of Civil Procedure, the City of Madison, Alabama, requests that this Court enter an order authorizing the deposit into the Registry of the Court, the sum of $100,000.00, and that such sum be deposited by the Clerk into an interest bearing account with the Court's authorized banking institution at the rate of interest prevailing on the date of the deposit. The City of Madison further requests that the money not be released to the Plaintiff, except upon full and final satisfaction of this judgment."

Both Allen and Holmes objected to the joint motion to intervene. On November 8, 2012, AMIC filed motions for a declaratory judgment in both actions, arguing that the City was required to provide Beard with defense counsel under § 11-47-24 and to indemnify him for any judgment rendered against him. AMIC further argued that the judgment collected by Allen or Holmes against Beard is limited to $100,000 under § 11-47-190.

On December 26, 2012, the trial court granted the joint motion to intervene but denied the City's motion to deposit money to satisfy the judgments. On December 27, 2012, Allen

8

1121006; 1121014; 1121038; 1121039

filed a response to AMIC's declaratory-judgment motion and asserted additional defenses, including res judicata, collateral estoppel, statute of limitations, failing to issue a "reservation of rights," and Beard's failure to appeal the trial court's order on the application of the $100,000 cap. Allen also filed a counterclaim pursuant to §§ 27-23-1 and 27-23-2, Ala. Code 1975, seeking to apply AMIC's insurance policy to satisfy the judgment. On January 13, 2013, Holmes filed a response to AMIC's motion for a declaratory judgment and asserted the same additional defenses asserted by Allen, along with an argument that § 11-93-2, § 11-47-24, and § 11-47-190 do not apply to a suit against a governmental employee in his individual capacity. Holmes also asserted a direct-action counterclaim against AMIC pursuant to §§ 27-23-1 and 27-23-2.

On January 28, 2013, the City filed a motion "to alter, amend, or vacate" the trial court's order denying its motion to deposit money to satisfy the judgments. On February 1, 2013, Beard filed a motion to substitute the City as the real party in interest.

9

1121006; 1121014; 1121038; 1121039

On March 19, 2013, Allen filed a summary-judgment motion, arguing that Beard was sued in his individual capacity, that the City was never sued, that Beard failed to appeal the trial court's findings that he was not engaged in the performance of his duties or engaged in work for the City at the time of the accident, and that, therefore, the municipal-damages cap did not apply. Allen further argued that because the $100,000 municipal-damages cap did not apply, AMIC as the insurer for the vehicle operated by Beard was obligated to pay the entire judgment. On March 26, 2013, Holmes filed a summary-judgment motion, also arguing that the statutory cap of § 11-47-190 does not apply to an action against a government employee who is sued in his individual capacity.

On April 12, 2013, the trial court held a hearing on all pending motions. On April 24, 2013, the trial court entered an order denying the City's motion to alter, amend, or vacate its judgment of December 26, 2012, in which the trial court had denied the City's motion to deposit funds. The trial court also denied Beard's motion for substitution and entered a summary judgment in favor of Allen and Holmes and against AMIC. The City and AMIC appealed separately.

10

1121006; 1121014; 1121038; 1121039

Discussion

The dispositive issue in this case is whether the $100,000 statutory cap of § 11-47-190 applies when a municipal peace officer, acting outside his employment with the municipality, is sued in his individually capacity.

The City argues in case no. 1121038 and case no. 1121039 that the trial court erred in not allowing it to deposit $100,000 to satisfy the judgment in favor of Allen and $100,000 to satisfy the judgment in favor of Holmes because the second sentence of § 11-47-190 uses the phrase "no recovery of <u>any</u> judgment." The City argues that this phrase includes a judgment obtained against a municipal peace officer who has been sued in his individual capacity. The City further argues that § 11-47-24 requires the City to indemnify its employees for their negligent actions, regardless of whether the employee is sued in his or her official capacity or individual capacity. The City argues that, under § 11-47-24, it is the real party in interest, because it is obligated to defend and indemnify its employees. Lastly, the City argues that the trial court should have allowed it to deposit money to satisfy the judgments because the City's liability is

11

1121006; 1121014; 1121038; 1121039

limited under the statutory cap, and, even if the cap is not applicable, the City should have been allowed to deposit the money to stop the accrual of interest on the final judgment.

AMIC argues in case no. 1121006 and case no. 1121014 that § 11-47-190 applies to "any judgment" against a municipal employee. AMIC argues that § 11-47-190 has no field of operation if it applies only to claims against municipal employees sued in their official capacity or as a result of acts occurring within the line of their duty. AMIC further argues that the historical context of the amendment to § 11-47-190 and Benson v. City of Birmingham, 659 So. 2d 82, 87 (Ala. 1995), indicate that § 11-47-190 applies to reduce the collection of "any judgment." AMIC contends that neither Allen nor Holmes specifically stated that Beard was being sued in his individual capacity. AMIC argues that Holmes and Allen do not have standing to challenge the City's indemnification of Beard under § 11-47-24. Lastly, AMIC argues that § 11-47-190 is a collections cap and serves to limit the amount Holmes and Allen can collect against AMIC as the City's insurer.

Section 11-93-2 provides a $100,000 cap for recovery against "a governmental entity," which, as defined in § 11-93-

12

1121006; 1121014; 1121038; 1121039

1(1), Ala. Code 1975, includes both municipalities and counties. Under § 11-47-24(a), municipal corporations are required to indemnify their employees under certain situations:

> "Whenever any employee of a municipal corporation of the State of Alabama shall be sued for damages arising out of the performance of his official duties, and while operating a motor vehicle or equipment engaged in the course of his employment, such government agency shall be authorized and required to provide defense counsel for such employees in such suit and to indemnify him from any judgment rendered against him in such suit. In no event shall a municipal corporation of the state be required to provide defense and indemnity for employees who may be sued for damages arising out of actions which were either intentional or willful or wanton."

Section 11-47-190 provides:

> "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, or unless the said injury or wrong was done or suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways, or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body and whenever the city or town shall be made liable for damages by

13

reason of the unauthorized or wrongful acts or negligence, carelessness, or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account by the party so injured. However, no recovery may be had under any judgment or combination of judgments, whether direct or by way of indemnity under Section 11-47-24, or otherwise, arising out of a single occurrence, against a municipality, and/or any officer or officers, or employee or employees, or agents thereof, in excess of a total $100,000 per injured person up to a maximum of $300,000 per single occurrence, the limits set out in the provisions of Section 11-93-2 notwithstanding."

Both the City and AMIC cite Suttles v. Roy, 75 So. 3d 90 (Ala. 2010). In Suttles, a pedestrian sued the City of Homewood and one of its police officers, who was driving a motorcycle that struck her. The police officer was sued in both his official and individual capacities. Homewood and the officer argued that the officer was immune from suit in his individual capacity because, they argued, he was acting within the line and scope of his employment. This Court noted that a sheriff and municipal peace officers are protected from suits seeking damages from them in their individual capacity by two different forms of immunity: Sheriffs are protected by State immunity under Ala. Const. 1901, art. I, § 14, and municipal peace officers are protected by State-agent immunity

14

1121006; 1121014; 1121038; 1121039

under the principles set out in <u>Ex parte Cranman</u>, 792 So. 2d 392 (Ala. 2000). We noted that it appeared that the trial court had not yet addressed whether the facts would support a finding that the officer was entitled to State-agent immunity.

In <u>Suttles</u>, Homewood and the officer argued that if the pedestrian could sue the officer in his individual capacity, then the recoverable damages against the officer were capped at $100,000 under § 11-47-190. This Court stated that, although the statutory cap on recovery against "a governmental entity" set forth in § 11-93-2 applied to a suit against a municipal employee in his official capacity, it did not apply to a suit against a municipal employee who is sued in his individual capacity. With regard to § 11-47-190, this Court noted:

> "[The officer] and Homewood also state in the 'summary of argument' and the 'conclusion' portions of their brief that the plain language of § 11-47-190 provides that no recovery may be had against an employee of a municipality in excess of $100,000, regardless of whether the employee is sued in his individual or official capacity. No explanation or elaboration on this argument is found in the initial brief, and no authority is cited supporting their interpretation of the Code section. Therefore, we decline to address this issue."

15

1121006; 1121014; 1121038; 1121039

75 So. 3d at 99 n.5.  Additionally, when this Court overruled

the officer and Homewood's application for rehearing, Justice

Shaw concurred specially, stating:

> "In the third issue in their brief on rehearing, Homewood and [the officer] contend that, if [the pedestrian] is able to assert individual-capacity claims against [the officer], then any damages award must be capped at $100,000 by Ala. Code 1975, § 11-47-190. As noted in the opinion on original submission, we have refused to address this issue based on the lack of argument regarding it in Homewood and [the officer's] initial brief. Because we do not address this issue, it must wait to be resolved on another day."

75 So. 2d at 104 (emphasis added).

While the appeals in the present case were pending, the

issue whether claims against a municipal employee  sued in his

individual capacity are subject to the statutory cap of § 11-

47-190 when those claims fall within the "willful and wanton"

exceptions to the doctrine of State-agent immunity under Ex

parte Cranman, 792 So. 2d 392 (Ala. 2000), was before this

Court in Morrow v. Caldwell, [Ms. 1111359, March 14, 2014] __

So. 3d ___ (Ala. 2014).  This Court stated in Morrow:

> "The first sentence of § 11-47-190 recognizes the principle that municipalities are generally immune from suit ('No city or town shall be liable for damages ....') and then provides an exception for actions seeking damages for the  negligent acts of  the  agents  or  employees  of  municipalities

16

('unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee'). There is no exception in the statute allowing an action against a municipality for the wanton or willful conduct of its agents or employees. Cremeens v. City of Montgomery, 779 So. 2d 1190, 1201 (Ala. 2000)('A municipality cannot be held liable for the intentional torts of its employees. See Ala. Code 1975, § 11-47-190 ....'); Town of Loxley v. Coleman, 720 So. 2d 907, 909 (Ala. 1998) ('This Court has construed § 11-47-190 to exclude liability for wanton misconduct.').

"Further, this Court has interpreted the first sentence of § 11-47-190 as serving

"'to limit municipality liability to two distinct classes. In the first classification, the municipality may be liable, under the doctrine of respondeat superior, for injuries resulting from the wrongful conduct of its agents or officers in the line of duty. In the second classification, the municipality may be liable for injuries resulting from its failure to remedy conditions created or allowed to exist on the streets, alleys, public ways, etc., by 'a person or corporation not related in service to the municipality.' Isbell v. City of Huntsville, 295 Ala. 380, 330 So. 2d 607, 609 (1976); City of Birmingham v. Carle, 191 Ala. 539, 542, 68 So. 22, 23 (1915). The municipality must have actual or constructive notice of the condition. If the claim is predicated under the second classification, then the third party shall also be liable. Isbell, supra, 330 So. 2d at 609, Carle, 191 Ala. at 541-42, 68 So. at 23.'

17

1121006; 1121014; 1121038; 1121039

"*Ellison v. Town of Brookside*, 481 So. 2d 890, 891-92 (Ala. 1985).

"The second sentence of § 11-47-190, which provides a cap on any recovery on a judgment resulting therefrom, begins with the word 'however.' The use of the sentence adverb (or conjunctive adverb)[3] 'however' indicates that the second sentence modifies the preceding sentence. Thus, it sets a limit on the 'recovery' stemming from a 'judgment' or 'judgments' that result from the liability allowed by the exception contained in the first sentence. So, while the first sentence provides that a municipality may be liable for the negligent acts of its agents or employees, the second sentence, by starting with the word 'however,' limits the 'recovery' from any such resulting 'judgment.' In other words, the 'recovery' that is capped to $100,000 by the second sentence is the recovery for any liability in a negligence action allowed by the first sentence. Thus, when the second sentence of § 11-47-190 is read in light of the first sentence, it is clear that the second sentence is meant to be a limitation on the amount of damages a person or corporation may recover from a municipality in those limited situations in which the municipality may be held liable.

"Morrow advances a different reading of the second sentence of § 11-47-190. Specifically, he points to the language that 'no recovery may be had under any judgment ... against ... any ... employee ... in excess of' $100,000 and contends that this provides a blanket cap on any damages awarded against any municipal agent or employee in any action. In other words, he would interpret the second sentence as limiting recovery from actions that are different from the actions allowed by the first sentence, including recovery in actions alleging wanton or willful conduct against municipal employees in their individual capacity. This reading of § 11-47-190 improperly disconnects the

18

second sentence from the context of the entire section and fails to acknowledge the conjunctive adverb 'however' that links the second sentence to, and causes it to modify, the first sentence.

"Further, it is clear that the reference to judgments against 'any officer or officers, or employee or employees, or agents' in the second sentence is made because of the need to be clear that <u>municipal liability</u> is limited to $100,000 even where that liability is a function of an action against one of those persons in their official capacity or of the special statutory indemnity imposed on a municipality by 11-47-24, Ala. Code 1975. As to the former, in <u>Smitherman v. Marshall County Commission</u>, 746 So. 2d 1001, 1007 (Ala. 1999), this Court held that 'claims against county commissioners and employees <u>in their official capacity</u> are, as a matter of law, claims against the county and subject to the $100,000 cap contained in § 11-93-2[, Ala. Code 1975, capping damages against governmental entities at $100,000].' Similarly, claims that are brought against municipal employees <u>in their official capacity</u> are also, as a matter of law, claims against the municipality.

"By the same token, because of the need to be clear that municipal liability is limited to $100,000 even where that liability is a function of an action against a municipal employee in his or her official capacity or of the special statutory indemnity imposed on the city by 11-47-24, the second sentence of § 11-47-190 specifically addresses 'judgments ... by way of indemnity under Section 11-47-24' that arise from judgments against 'any officer or officers, or employee or employees, or agents' of a municipality.

"Section 11-47-24, Ala. Code 1975, provides:

"'(a) Whenever any employee of a municipal corporation of the State of

19

Alabama shall be sued for damages arising out of the performance of his official duties, and while operating a motor vehicle or equipment engaged in the course of his employment, such government agency shall be authorized and required to provide defense counsel for such employees in such suit and to indemnify him from any judgment rendered against him in such suit. In no event shall a municipal corporation of the state be required to provide defense and indemnity for employees who may be sued for damages arising out of actions which were either intentional or willful or wanton.

"'(b) All municipal corporations of the State of Alabama are hereby authorized to contract at governmental expense for policies of liability insurance to protect employees in the course of their employment.'

"As this Court noted in Benson v. City of Birmingham, 649 So. 2d 82, 87 (Ala. 1995), by amending § 11-47-190 in 1994 to add the second sentence, the legislature clarified the fact that the limitation on recovery against a municipality also limits the amount for which a municipality may indemnify a negligent employee.

"Finally, no language in § 11-47-190 suggests that it is intended to apply to claims against municipal employees who are sued in their individual capacities. Rather, when the statute is read as a whole, it is clear that the limitation on recovery in the second sentence of § 11-47-190 is intended to protect the public coffers of the municipality, not to protect municipal employees from claims asserted against them in their individual capacity.[4]

20

1121006; 1121014; 1121038; 1121039

> "[3]A sentence or conjunctive adverb 'is a word that modifies a whole previous statement. Frederick Crews, <u>The Random House Handbook</u> 403 (6th ed. 1992).
>
> "[4]Under § 11-47-24(a), the City would not be required to indemnify Morrow for any judgment against him that was based on damage resulting from his intentional, willful, or wanton conduct."

<u>Morrow</u>, ___ So. 3d at ___.

In the present case, the City's and AMIC's arguments that the second sentence of § 11-47-190, which provides that no recovery from a municipality may be had under "<u>any judgment</u>," whether direct or by way of indemnification under § 11-24-74, includes "judgments" against an employee, ignore the placement of the second sentence as a limitation on the "recovery" stemming from the "judgments" that result from the liability allowed by the first sentence in § 11-47-190. The first sentence provides that a municipality may be liable for the negligent acts of its agents or employees. The second sentence, by starting with the word "however," limits the "recovery" from any "judgment" resulting from that liability. In other words, the "recovery" that is capped to $100,000 by the second sentence is a recovery against a municipality in a negligence action, as contemplated by the first sentence (as well as a recovery against a municipality in an indemnity

21

action, as also referenced in the second sentence). The City and AMIC would interpret the second sentence as limiting recovery from actions that are different from the actions allowed by the first sentence, including actions against a municipal employee in his or her individual capacity where that employee was acting outside the line of his or her duty. This reading disconnects the second sentence from the first. It also ignores the language in the second sentence referring to indemnification under § 11-47-24, which provides that an employee's actions must "aris[e] out of the performance of his official duties" in order for the municipality to have liability when an employee is sued individually, and it conflicts with Morrow.

The City argues that § 11-47-24 requires it to indemnify its employees for their negligent actions, regardless of whether the employee is sued in his or her individual or official capacity. The City ignores the language in § 11-47-24 that such conduct has to "aris[e] out of the performance of his official duties" and "while the employee is engaged in the course of his employment" with the municipality. Although obligated under § 11-47-24 to defend and indemnify its

22

employees when they are sued in their individual capacity, that obligation arises only in reference to alleged misconduct occurring in the performance of official duties.

The City argues that it is the "real party in interest" under Rule 17, Ala. R. Civ. P., and § 11-47-24 because it is obligated to defend and indemnify its employees. Rule 17 requires that "[e]very action shall be <u>prosecuted</u> in the name of the real party in interest." (Emphasis added.) This Court has stated that "'the real party in interest principle is a means to identify the person who possesses the right sought to be enforced.'" <u>State v. Property at 2018 Rainbow Drive</u>, 740 So. 2d 1025, 1027 (Ala. 1999)(quoting <u>Dennis v. Magic City Dodge, Inc.</u>, 524 So. 2d 616, 618 (Ala. 1988)). However, the City would not supplant Beard as the real party in interest. The fact remains that Allen and Holmes have sued Beard, individually, and he is personally liable to them under the judgments that have been entered. Even if the City had an obligation under § 11-47-24 to indemnify Beard (which it does not because his acts were found by the trial court in un-appealed judgments to be outside the scope of his employment), the City intervened, arguing that it was "the real party in

23

1121006; 1121014; 1121038; 1121039

interest relating to the collection of the judgment[s]" because it had a duty to indemnify Beard, and it argued that the judgments were limited to $100,000. Rule 17 applies to ensure that an action is being "prosecuted" by the proper plaintiff, and it serves to protect a defendant against a subsequent action by the party actually entitled to relief. The City has not cited any authority to support applying Rule 17 to an intervenor seeking to satisfy the judgments against a defendant.

Lastly, the City argues that the trial court erred in not allowing it to deposit $200,000 to satisfy both Allen's and Holmes's judgments because § 11-47-24 requires it to indemnify its employees. As discussed above, § 11-47-24 does not require a municipality to indemnify those employees who are acting outside the performance of official duties. In conjunction with its argument regarding depositing the money with the court, the City argues that it should have been allowed to deposit the money in order to stop the accrual of interest on any amount owed under the judgments. However, the City did not raise this argument in the trial court. The City's arguments at the trial court level were limited to

24

1121006; 1121014; 1121038; 1121039

depositing $200,000 to satisfy both judgments. It is well settled that this Court will not reverse a trial court's judgment based on arguments not presented to the trial court. Lloyd Noland Hosp. v. Durham, 906 So. 2d 157 (Ala. 2005).

AMIC argues that § 11-47-190 has no field of operation if it applies only to cases brought against a municipal employee in his official capacity or for acts occurring within the line of his duty. AMIC argues that, because § 11-93-2 (capping damages at $100,000) is a cap on damages against a governmental entity (which must necessarily be paid out of public coffers), § 11-47-190 must also cover individual-capacity claims against municipal employees (which would otherwise be paid out of the employee's individual assets), or there would be no distinction between the damages cap in § 11-93-2 and the cap in § 11-47-190 because both would place a cap on damages against municipal employees only in their official capacity. In short, AMIC is arguing that § 11-93-2 and § 11-47-190 would cover the same claims unless § 11-47-190 did not also pertain to claims against municipal employees sued in their individual capacity. However, AMIC ignores the language

25

in § 11-47-190 that the City's obligation to indemnify an employee is limited.

We agree that municipal liability is limited to $100,000 even where that liability is a function of an action against a municipal employee in his or her official capacity or of the special statutory indemnity imposed on the municipality by § 11-47-24. The second sentence of § 11-47-190 specifically addresses judgments by way of indemnity under § 11-47-24 that arise from judgments against any officer or officers, or employee or employees, or any agent or agents of the municipality. When § 11-47-190 is read as a whole, it is clear that the limitation on recovery in the second sentence is intended to protect the public coffers of the municipality, not to protect municipal employees from claims asserted against them in their individual capacity.

Next, AMIC argues that the historical context of the 1994 amendment to § 11-47-190 and Benson v. City of Birmingham, 659 So. 2d 82, indicates that § 11-47-190 applies to reduce the collection of "any judgment." First, we note that Benson involved a judgment where the peace officer was acting within the line of his duty for the purposes of imposing liability on

26

the municipality under the doctrine of respondeat superior. The present case involves actions arising outside the employee's line of duty. Second, as already discussed, in Morrow and Suttles we explained why the language used in § 11-47-190 is not applicable to "any" judgment.

AMIC argues that Beard was not actually sued in his "individual capacity" because neither Allen's nor Holmes's complaints contain the phrase "individual capacity." Both complaints allege facts indicating that Beard was acting outside his employment as a police officer when the accident occurred. The language of the complaint as a whole is determinative of whether a municipal employee is being sued in his or her individual or official capacity. Ex parte Alabama Dep't of Mental Health, 837 So. 2d 808, 811-12 (Ala. 2002).

AMIC argues that Allen and Holmes do not have standing to challenge the City's indemnification of Beard under § 11-47-24 because, it says, there is no authority expressly prohibiting the City from indemnifying Beard. The question before us is not whether there is any statute that prohibits a municipality from voluntarily indemnifying an employee in Beard's position, and we decline to address that issue. The question before us

27

1121006; 1121014; 1121038; 1121039

is whether there is a statute that obligates the City to do so.  For the reasons discussed above, we conclude that there is not.

Lastly, AMIC argues that § 11-47-190 is a collection cap and limits the amount Allen and Holmes can collect against AMIC as the City's insurer.  In support of this argument AMIC cites St. Paul Fire & Marine Insurance Co. v. Nowlin, 542 So. 2d 1190 (Ala. 1988).  In Nowlin, the plaintiff recovered a $500,000 malpractice verdict against the Druid City Hospital Board. The trial court, relying on § 11-93-2, reduced the verdict to $100,000.  This Court reinstated the verdict. After remand, the trial court reinstated the original verdict and entered a judgment thereon.  The plaintiff, pursuant to § 27-23-2, obtained a writ of garnishment to collect $400,000 (the hospital board's insurer had paid the $100,000 reduced verdict). The insurer and the hospital board objected to the garnishment on the ground that, because § 11-93-2 limited the hospital board's liability to $100,000, the insurer's liability was also limited to $100,000. The trial court ordered the garnishment to issue. This Court reversed the trial court's judgment and held that § 11-93-2 was not

28

1121006; 1121014; 1121038; 1121039

unconstitutional, that § 11-93-2 limited the liability of the insurer to $100,000, the liability of the hospital board, and that § 11-93-2, therefore, limited the plaintiff's rights under § 27-23-2 against the insurer.

Nowlin is distinguishable because in Nowlin the municipality's liability was limited by the statutory damages cap and, in turn, the municipality's insurer's liability was also limited by the cap. In the present case, the statutory damages cap does not apply to Allen's and Holmes's judgments against Beard individually.

We note that it would be unlikely that a municipal employee would by covered by insurance paid for by the municipality for acts outside the employee's employment. Here, however, the City obtained an insurance policy for its police cars. The City opted to have its police officers' vehicles insured for activities outside the officers' employment, and AMIC accepted premiums for such coverage and has admitted that Beard was an insured under its policy with the City.[3]

### Conclusion

_____

[3]AMIC does not raise any argument as to whether the City had the authority under § 11-47-24(b) to purchase insurance for activities outside employment.

The $100,000 statutory cap of § 11-47-190 does not apply when a peace officer, acting outside his employment, is sued in his individual capacity. The limitation on recovery in the second sentence of § 11-47-190 is intended to protect the public coffers of the municipality, not to protect municipal employees from claims asserted against them in their individual capacity. The cap on damages for claims against a municipality does not limit the recovery on a claim against a municipal employee, acting outside his employment, when he is sued in his individual capacity. We recognize that municipal employees were not the intended subject of the legislature's enactment of § 11-17-190,[4] and we also recognize

---

[4]"[T]he fact and amount of liability by a municipal employee in his or her individual capacity were not and are not proper, or intended, subjects of the legislature's enactment of §§ 11-47-190 and -191 and their predecessors. Instead, employees, officers, and agents of a municipality find themselves referenced in the last sentence of § 11-47-190 simply because of the need to be clear that governmental liability is limited to $100,000 even where that liability is a function of an action against one of those persons in his or her official capacity or of the special statutory indemnity obligation imposed on the municipality by § 11-47-24, Ala.Code 1975. The legislature's use of the word 'however' to introduce the second sentence of § 11-47-190, and the relationship between the first and second sentences of § 11-47-190 that, as discussed in the main opinion, it reflects, simply reinforces this understanding." Morrow, ___ So. 3d at ___. (Murdock, J., concurring specially) (emphasis omitted).

1121006; 1121014; 1121038; 1121039

that the legislature is better suited to speak comprehensively on the individual liability of municipal employees. Based on the foregoing, the judgment in favor of Allen and against AMIC is affirmed; the judgment in favor of Holmes and against AMIC is affirmed; the judgment in favor of Holmes and against the City is affirmed; and the judgment in favor of Allen and against the City is affirmed.

1121006 -- AFFIRMED.

1121014 -- AFFIRMED.

1121038 -- AFFIRMED.

1121039 -- AFFIRMED.

Moore, C.J., and Stuart, Bolin, Parker, Shaw, Main, Wise, and Bryan, JJ., concur.

Murdock, J., concurs in the rationale in part and concurs in the result.*

*Although Justice Murdock did not attend oral argument in this case, he has viewed a video recording of that oral argument.

31

1121006; 1121014; 1121038; 1121039

MURDOCK, Justice (concurring in the rationale in part and concurring in the result).

I concur in the main opinion with the exception of its comment regarding the latter of the two issues addressed in this writing. First, I wish simply to reiterate my understanding that the $100,000 cap expressed in § 11-47-190, Ala. Code 1975, would be inapplicable to a claim against Richard Alan Beard in his individual capacity, even if the claim had arisen from acts or omissions by Beard while acting within the line and scope of his employment or, in the language of § 11-47-24, Ala. Code 1975, "out of the performance of his official duties." As explained in Morrow v. Caldwell, [Ms. 1111359, March 14, 2014] ___ So. 3d ___ (Ala. 2014), and reconfirmed here, § 11-47-190 is intended to protect municipal coffers; the cap on municipal liability expressed therein is only that -- a cap on municipal governmental liability (whether for payment of damages to a third party or of indemnity to its own employee). The cap is simply inapposite to a judgment against any other entity,

32

1121006; 1121014; 1121038; 1121039

including a municipal employee sued in his or her individual capacity.[5]

The main opinion comments that "the legislature is better suited to speak comprehensively on the individual liability of municipal employees." ___ So. 3d at ___. First, our existing statutory and caselaw jurisprudence arguably already speaks comprehensively to the question. State-agent immunity, as developed extensively in our caselaw, will apply in most cases involving municipal law-enforcement officials, particularly when they are acting within the line and scope of their duties; it will apply in many cases to non-law-enforcement municipal employees. In addition, there may be instances in which municipal employees are sued where, notwithstanding the filing of a lawsuit by a third party, the nature of the employee's obligations to his or her municipal employer do not in fact also create a duty on the part of an employee to the

_____

[5]The nature of the employee's conduct may serve to relieve a municipality from any indemnity obligation at all (if the tortious conduct does not arise out of the performance of official duties), or it may leave the municipality with up to a $100,000 obligation (if the tortious conduct does arise out of the performance of official duties). Either way, it does not apply to limit the amount of any underlying damages verdict rendered against the employee personally, rather than in his or her official capacity.

33

1121006; 1121014; 1121038; 1121039

third party. See generally, e.g., <u>Morrow v. Caldwell</u>, ___ So. 3d at ___ (Murdock, J., concurring specially) ("[T]he question before us in this permissive appeal is limited to whether, if an employee of a municipality is personally liable for a tort he or she commits in the course of his or her employment by a municipality, that liability can exceed the $100,000 cap referenced in § 11-47-190. Any such liability, however, would of course depend as a threshold matter on the existence of a duty that was personal to the employee (not merely a duty of his or her employer) and that ran to the plaintiff (and not merely from the employee to his or her employer). This and other questions concerning the prospective liability of a municipal employee in Wayne Morrow's position are not before us, and the main opinion should not be understood as implying any answer to them."). As to any circumstances outside the foregoing, i.e., where the employee is <u>not</u> considered a State agent and <u>has</u> breached some individual duty owed by him or her to a third party, provisions of the Alabama constitution appear to present an obstacle to a legislative prescription of limits on individual liability. <u>Id</u>. (citing <u>Garner v. Covington Cnty.</u>, 624 So. 2d

34

1121006; 1121014; 1121038; 1121039

1346 (Ala. 1993), and Home Indem. Co. v. Anders, 459 So. 2d 836 (Ala. 1984), for the proposition that, it is only because "[t]he common-law doctrine of governmental immunity for municipal and county governments predates ... the adoption of the 1901 Constitution, that [that] doctrine survived the adoption of that Constitution, including §§ 11 and 13 thereof ... and is subject to modification by the legislature"); see also Smith v. Schulte, 671 So. 2d 1334 (Ala. 1995).