MURDOCK, Justice.
Pursuant to Rule 5, Ala. R. App. P., this Court granted Clifford Goodman Wright ("Wright"), the administrator of the estate of Mary Evelyn Wright, deceased, permission to appeal from an interlocutory order of the Cleburne Circuit Court ("the trial court"). In that order, the trial court ruled that the $100,000 cap on damages set out *189 in § 11-93-2, Ala. Code 1975, applied to Wright's claims against three nurses-Dawn Reid, Phyllis Harris, and Tuwanda Worrills (hereinafter referred to collectively as "the nurses")-who were employees of the Cleburne County Hospital Board, Inc., d/b/a Cleburne County Nursing Home ("the Hospital Board"), at the times relevant to Wright's action. Section 11-93-2 governs "[t]he recovery of damages under any judgment against a [county or municipal] governmental entity." Because Wright sued the nurses seeking money damages in their individual capacities, the trial court erred in applying § 11-93-2 to Wright's claims. Accordingly, we reverse the trial court's judgment and remand the case.
Facts and Procedural History
In October 2013, Mary Evelyn Wright ("Mary") commenced a personal-injury action against "Cleburne County Hospital and Nursing Home, Inc." Mary asserted in her complaint that she had suffered injuries from a fall while she was a resident of a nursing home allegedly operated by the defendant ("the nursing home"). Mary died, allegedly from her injuries, the day after the complaint was filed. Wright was appointed the administrator of Mary's estate and was substituted as the plaintiff.
In response to the complaint, the Hospital Board filed an answer indicating that it operated the nursing home where the incident occurred and that it was the proper defendant in the action. Thereafter, Wright amended the complaint to correctly identify the Hospital Board as the defendant. Wright also amended the complaint to add the nurses as defendants and to assert wrongful-death claims against the nurses and the Hospital Board.
In the amended complaint, Wright alleged that the nurses provided health-care services to Mary while she was a resident of the nursing home, that the nurses negligently breached the applicable standard of care, and that those breaches proximately caused Mary's injuries and subsequent death. Specifically, Wright alleged that the nurses breached the standard of care by:
"(a) Negligently failing to provide adequate supervision to the nursing staff to aid Mary Evelyn Wright with ambulation when out of bed to prevent falls;
"(b) Negligently failing to provide appropriate nursing care in accordance with the [Hospital Board's] policy and procedure manual, the rules of the Alabama State Board of Health for facility, and the regulations of the U.S. Department of Health and Human Services, on care plans, fall risk assessments, and safety measures to prevent falls;
"(c) [F]ail[ing] to provide, assure, modify, and publish to nursing personnel nursing care plan revisions and modifications following the quarterly nursing review on 10/2/13 and the Interdisciplinary Care Plan Team meeting on 10/2/13 as the needs of Mary Evelyn Wright changed;
"(d) Negligently failing to implement and assure an adequate nursing care plan for Mary Evelyn Wright was followed by nursing personnel;
"(e) Negligently failing to add nursing interventions to protect Mary Evelyn Wright from falling since she had previously fallen in the facility on 9/28/13;
"(f) Negligently failing to properly assess Mary Evelyn Wright for the risk of falling;
"(g) Negligently failing to provide adequate safety measures to protect Mary Evelyn Wright from falling;
"(h) Negligently failing to provide appropriate assistance with ambulation and toileting;
*190 "(i) Negligently failing to provide care, treatment, assessments and medication in accordance with the physicians' orders and standard nursing practice;
"(j) Negligently failing to maintain medical records which contained sufficient information to justify the diagnosis and treatment and to document the results, including documented evidence of assessments of the needs of Mary Evelyn Wright and establish appropriate plans of care, services, and treatment;
"(k) Negligently failing to appropriately monitor Mary Evelyn Wright and recognize signs and symptoms of a change in her health condition;
"(l ) Negligently failing to properly notify the family of Mary Evelyn Wright of a change in her health condition; [and]
"(m) Negligently failing to notify the attending physician of Mary Evelyn Wright of a change in her health condition."
Wright sued the nurses in their individual capacities. Wright also alleged that the nurses, at all relevant times, "were acting within the line and scope of their employment as the agent[s], servant[s], and/or employee[s] of [the Hospital Board]" and therefore that the Hospital Board was vicariously liable for the nurses' alleged acts and omissions.
The Hospital Board and the nurses sought an order from the trial court declaring that Wright's claims are subject to the damages cap of § 11-93-2, Ala. Code 1975, which provides:
"The recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for bodily injury or death for one person in any single occurrence. Recovery of damages under any judgment or judgments against a governmental entity shall be limited to $300,000.00 in the aggregate where more than two persons have claims or judgments on account of bodily injury or death arising out of any single occurrence. Recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for damage or loss of property arising out of any single occurrence. No governmental entity shall settle or compromise any claim for bodily injury, death or property damage in excess of the amounts hereinabove set forth."
Thereafter, the trial court entered an order stating that "[t]he provisions of Ala. Code [1975,] § 11-93-2 [,] shall apply to ... all claims asserted against the [nurses] in the line and scope of their employment" and that "[a]ny judgment rendered against any of the [d]efendants will be subject to the provisions of Ala. Code [1975,] § 11-93-2." We granted Wright's request for permission to appeal from that order as to the individual-capacity claims against the nurses.
Analysis
As this Court stated in Morrow v. Caldwell, 153 So.3d 764, 767 (Ala. 2014), an appeal under Rule 5, Ala. R. App. P.,
"presents a pure question of law. This Court has held: ' " " '[O]n appeal, the ruling on a question of law carries no presumption of correctness, and this Court's review is de novo.' " Rogers Found. Repair, Inc. v. Powell, 748 So.2d 869, 871 (Ala. 1999) (quoting Ex parte Graham, 702 So.2d 1215, 1221 (Ala. 1997) ).' City of Prattville v. Corley, 892 So.2d 845, 847 (Ala. 2003)."
Invoking Rule 5(a), Ala. R. App. P., the trial court submitted four questions of law for this Court's consideration:
"1. Has the ruling in Ravi v. Coates, 662 So.2d 218 (Ala. 1995), that claims against governmental entity employees *191 are not subject to the § 11-93-2 cap been overturned by the ruling in Smitherman v. Marshall County Commission, 746 So.2d 1001 (Ala. 1999) ?
"2. With respect to the cap, are the terms 'line and scope of employment' synonymous with 'official capacity'?
"3. Can governmental entity non-elected employees working within the line and scope of their employment be sued in their individual capacity as well as in their official capacity?
"4. Are nurses employed by a 'governmental entity' hospital protected by the § 11-93-2 cap in their individual capacities when their actions or omissions occurred while they were working within the line and scope of their employment?"
Questions 1 and 4 are answered by our holdings and analysis in the case of Ravi v. Coates, 662 So.2d 218 (Ala. 1995), about which the trial court inquires in question 1, and our more recent decisions in Suttles v. Roy, 75 So.3d 90, 98 (Ala. 2010), Morrow v. Caldwell, 153 So.3d 764 (Ala. 2014), and Alabama Municipal Insurance Corp. v. Allen, 164 So.3d 568, 574 (Ala. 2014). A response to questions 2 and 3 requires but an acknowledgment of basic principles of agency and employment law that serve as the well established framework for our discussions in these and countless other public-employee cases. We begin with a brief acknowledgment of those principles, before more specifically discussing how the referenced cases address the issues raised in questions 1 and 4.
It is axiomatic that an employee acting in the line and scope of his employment may, in the course of doing so, violate a duty owed by the employee individually to a specific third party (e.g., a driver on an errand for his employer owes an individual duty of care to third-party motorists whom he encounters on public roadways). If the employee breaches that duty, he may be sued in his individual capacity, even as his employer may simultaneously be vicariously liable under the doctrine of respondeat superior because the employee was acting within the line and scope of his employment when he committed the tort. Thus, in answer to questions 2 and 3, a government employee sued for a tortious act committed in the line and scope of his employment may, in an appropriate case (i.e., where the employee has breached a duty he owes individually to a third party), be sued individually.[1] As will be evident in our discussions below of Ravi, Suttles, Morrow, and Allen, this principle is integral to the analysis in these public-employee cases.[2]
*192 And, of course, it is the plaintiff who is "the master of his complaint." It is the plaintiff who elects whether to frame his claim as one seeking recovery against a defendant in his official capacity or one seeking a recovery against the defendant in his individual capacity-or both. See, e.g., Ex parte Sundy, 164 So.3d 1089, 1093 (Ala. 2014). Whether the law recognizes a duty to the plaintiff on the part of the defendant in the capacity alleged by the plaintiff goes to the merit of the claim framed by the plaintiff. See note 2, supra.[3] It is for the court to address the merit of the claim as framed by the plaintiff, not to reframe it.
*193 We turn now to questions 1 and 4 as framed by the trial court. We first acknowledge the holding of Ravi v. Coates, 662 So.2d 218 (Ala. 1995), to which the trial court refers in question 1. The trial court in Ravi"granted the [county] hospital's motion to reduce the judgment against it to $100,000 pursuant to § 11-93-2, Ala. Code 1975, but denied the motion to do likewise for the [nurse-]employees of the hospital, Cathy Foxworthy and Wilma Vaughn." 662 So.2d at 223. On appeal, Foxworthy and Vaughn argued that the trial court erred by not applying the § 11-93-2 damages cap to the damages award against them. This Court rejected that argument, noting that, by its terms, § 11-93-2 applies to damages awards " 'against a governmental entity,' " as that term is defined in § 11-93-1(1), Ala. Code 1975. 662 So.2d at 223 (quoting § 11-93-2 ). The Court concluded that, "because § 11-93-2 does not apply to the employees of a governmental entity, the court properly refused to reduce the judgment against nurses Foxworthy and Vaughn." 662 So.2d at 223 (emphasis added).
The holding in Ravi is consistent with the fundamental principle that a government employee is liable, in his individual capacity, for torts committed against a third party to whom the employee individually owes a duty. Nothing in Smitherman v. Marshall County Commission, 746 So.2d 1001 (Ala. 1999), unsettles this fundamental principle. As observed in note 2, supra, the county commissioners and the county engineer in Smitherman owed no personal duties to the plaintiff in that case. Accordingly, this Court's analysis in Smitherman did not apply the damages cap of § 11-93-2 to the claims against those defendants in their individual capacities. There was no need to do so. Instead, the outright dismissal of those claims, upheld by this Court, was consistent with the fundamental principle that a government official or employee may be liable individually to a third party only if the official or employee owes a duty, individually, to that party.
On the other hand, the plaintiff's claims against the county commissioners and the county engineer in Smitherman, to the extent brought against those officials in their official capacities, did state otherwise cognizable claims for relief under Alabama law, and, therefore, the damages cap of § 11-93-2 was apposite to those claims. In so holding, this Court left no doubt that, in fact, claims against county officials or employees in their individual capacities and in their official capacities are in fact two separate things. Far from overruling Ravi, the Court's analysis in Smitherman distinguished-and reinforced-the holding in Ravi by explaining that a suit against a public official in his official capacity, as opposed to his individual capacity, is subject to the damages cap of § 11-93-2 :
"The plaintiffs and amicus Alabama Trial Lawyers Association argue that the cap statute should not apply to any entity except the county, citing Ravi v. Coates, 662 So.2d 218, 223 (Ala. 1995)....
"....
"The plaintiffs are correct in stating that in Ravi this Court held that the cap did not apply to nurses employed by a public hospital. However, in that case, this Court did not analyze the distinctions between claims against public employees in their individual capacities and those against public employees in their official capacities. That distinction is a key element in our analysis of this case."
746 So.2d at 1006 (emphasis added); id. at 1007 (holding that "claims against county commissioners and employees in their official capacity are, as a matter of law, claims against the county and are subject to the $100,000 cap contained in § 11-93-2").
*194 And, to be clear, in Suttles v. Roy, 75 So.3d 90 (Ala. 2010), this Court observed that "nothing in ... Smitherman [ ] or § 11-93-2 allows" "this Court ... [to] consider the individual claim against Suttles as, in substance, an official-capacity claim subject to the cap of § 11-93-2," 75 So.3d at 98,[4] and we further explained the distinction between individual-capacity and official-capacity claims in relation to the damages cap imposed by § 11-93-2 :
"Insofar as Roy's action seeks damages against Suttles in his official capacity, as noted in Smitherman, the cap of § 11-93-2 limits any recovery against Homewood and Suttles to $100,000. Suttles and Homewood thus contend that 'it makes no sense at all' for the claims against Suttles in his official capacity 'to be governed by the statutory damages cap' without the claims against him in his individual capacity also being subject to the cap. Homewood and Suttles's brief at 20. This distinction-'capping damages for claims against Suttles in his official capacity but not capping damages for claims asserted against him in his individual capacity'-however, is clearly provided by the cited authorities.
" Section 11-93-2 caps the damages one may recover 'against a governmental entity.' The policy of § 11-93-2 is to 'preserve' and 'protect[ ] the public coffers, for the benefit of all of the citizenry.... 'Benson[ v. City of Birmingham], 659 So. 2d [82] at 86-87 [ (Ala. 1995) ]. A claim against an employee in his or her individual capacity, however, does not seek to recover damages from the governmental entity. See Gamble v. Florida Dep't of Health & Rehabilitative Servs., 779 F.2d 1509, 1513 (11th Cir. 1986) ('Whether a state officer is being sued for damages in an official or an individual capacity is not mere semantics; the question is whether the plaintiff is reasonably seeking relief from the state coffers or from the individual's assets.' (quoted in Ex parte Troy Univ., 961 So.2d 105, 110 (Ala. 2006) )).
"Homewood and Suttles contend that at the time of Roy's injuries Suttles was acting in the line and scope of his employment and that there is no factual distinction between Roy's claims against Suttles in his official capacity and in his individual capacity. They thus argue that 'the inescapable conclusion is that it makes no sense at all' for damages sought against him in his official capacity to be capped, while damages sought against him in his individual capacity are not. However, no authority is cited or argument advanced demonstrating that this Court or the trial court can consider the individual claim against Suttles as, in substance, an official-capacity claim subject to the cap of § 11-93-2 ; further, nothing in Benson, Smitherman, or § 11-93-2 allows such a result."
75 So.3d at 97-98 (emphasis added). See also Alabama Mun. Ins. Corp. v. Allen, 164 So.3d 568, 574 (Ala. 2014) (explaining that, in Suttles, "[t]his Court stated that, although the statutory cap on recovery against 'a governmental entity' set forth in § 11-93-2 applied to a suit against a municipal employee in his official capacity, it did not apply to a suit against a municipal *195 employee who is sued in his individual capacity" (emphasis added)).
And, we repeat, "nothing in ... Smitherman [ ] or § 11-93-2 allows [the] result" that a court can convert a claim framed by the plaintiff as one against a governmental employee in his individual capacity into "an official-capacity claim" so as to make it "subject to the cap of § 11-93-2." 75 So.3d at 98. Again, official-capacity and individual-capacity claims are two distinctly different types of claims, and it is the plaintiff as "the master of his complaint" that decides whether to pursue one or the other-or both. If a plaintiff chooses to sue an official or employee in his official capacity, such a claim is treated as a claim against the "governmental entity" because it constitutes an attempt to reach the public coffers. As Suttles clearly states, the purpose of the § 11-93-2 damages cap is to protect public coffers; therefore, the cap would apply to that claim. Unlike official-capacity claims, however, individual-capacity claims seek to hold a government official or employee personally liable, i.e., such claims seek a monetary recovery against the individual that can be collected only from his personal assets. Section 11-93-2 simply is not applicable to such a claim.
Our conclusion is also consistent with our holding in Morrow v. Caldwell, 153 So.3d 764 (Ala. 2014), which addressed the application of the similar damages cap provided specifically to municipalities under § 11-47-190, Ala. Code 1975. In Morrow, Keandarick Russell, a minor, was electrocuted and died after he touched a fence surrounding air-conditioning equipment that had been inspected by Wayne Morrow, an electrical inspector for the City of Montgomery. Shameka Caldwell, as Russell's mother and next friend, filed a wrongful-death action against Morrow, in his individual capacity. 153 So.3d at 766.
"Morrow filed a motion asking the trial court for 'a judgment declaring the statutory limitations of liability of $100,000, pursuant to Ala. Code 1975, § 11-47-190, are applicable to Defendant Wayne Morrow in this case.' Caldwell filed a response to Morrow's request for a declaratory judgment in which she contended that the statutory cap on recovery set forth in § 11-47-190 for damages against a municipality would not apply to the claims in this case because the claims were brought against Morrow in his individual capacity and because she alleged that Morrow had acted recklessly, wantonly, or willfully."
153 So.3d at 767 (emphasis added).
After the trial court denied Morrow's motion, this Court granted Morrow's petition for a permissive appeal as to the following question: " 'Whether the claims against a municipal employee, sued in his individual capacity, are subject to the statutory cap of Ala. Code 1975, § 11-47-190, when those claims fall within the "willful or wanton" exception to the doctrine of State-agent immunity, under Ex parte Cranman, 792 So.2d 392 (Ala. 2000).' "[5] 153 So.3d at 767.
On appeal, we noted that
"Morrow argues that the plain language of § 11-47-190 clearly dictates that the $100,000 statutory cap on recovery would apply to the claims against him *196 even though he is being sued in his individual capacity and even though Caldwell is alleging that he acted recklessly, willfully, and wantonly. This Court has not yet addressed whether the statutory cap on recovery set forth in § 11-47-190 would apply to limit the liability of municipal employees sued in their individual capacity."
153 So.3d at 768 (emphasis added). We then proceeded to hold in Morrow that the damages cap at issue in that case, like the similar damages cap at issue in Ravi, was enacted for the protection of the public coffers and therefore applied to claims brought against governmental employees in their official capacities, but not individually. 153 So.3d at 771.[6] See also Allen, 164 So.3d at 578 ("When § 11-47-190 is read as a whole, it is clear that the limitation on recovery in the second sentence is intended to protect the public coffers of the municipality, not to protect municipal employees from claims asserted against them in their individual capacity.").[7]
Conclusion
A government employee sued for tortious acts he commits while acting in the line and scope of his employment may, in an appropriate case (i.e., where he has breached a duty he individually owes to a third party), be sued individually. Section 11-93-2 is not applicable to such a claim. Accordingly, we reverse the trial court's judgment stating that the claims against the nurses, in their individual capacities, are subject to the damages cap in § 11-93-2, and we remand the case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
Parker, Wise, and Bryan, JJ., concur.
Stuart, C.J., and Bolin, Shaw, and Main, JJ., concur in the result.
Sellers, J., dissents.
The trial court ruled that claims against the nurses-Dawn Reid, Phyllis Harris, and Tuwanda Worrills-based on allegedly negligent acts or omissions committed in the line and scope of their employment with the Cleburne County Hospital Board, *197 Inc., are subject to the damages cap set out in § 11-93-2, Ala. Code 1975. Thus, it appears that the trial court concluded that such claims are, necessarily, claims against the nurses in their official capacities and are governed by the holding of Smitherman v. Marshall County Commission, 746 So.2d 1001 (Ala. 1999).
In arguing to the trial court that the claims asserted by Clifford Goodman Wright, administrator of the estate of Mary Evelyn Wright, deceased, against the nurses are claims against them in their official capacities, the nurses and the Hospital Board pointed to Alabama Municipal Insurance Corp. v. Allen, 164 So.3d 568 (Ala. 2014), an opinion issued almost 20 years after Ravi v. Coates, 662 So.2d 218 (Ala. 1995). In Allen, this Court considered whether a municipal police officer, who was "acting outside his employment" when he caused an automobile accident that injured two individuals, was entitled to rely on a damages cap.[8] The police officer in Allen caused the accident while driving to work at an extreme rate of speed, and, after the accident, he tested positive for marijuana. 164 So.3d at 569. In considering an argument that the officer had not actually been sued in his individual capacity, this Court said:
"[The appellant] argues that [the police officer] was not actually sued in his 'individual capacity' because neither [of the plaintiffs'] complaints contain the phrase 'individual capacity.' Both complaints allege facts indicating that [the officer] was acting outside his employment as a police officer when the accident occurred. The language of the complaint as a whole is determinative of whether a municipal employee is being sued in his or her individual or official capacity."
164 So.3d at 579. The nurses and the Hospital Board in the present case argued to the trial court that the above-quoted portion of Allen suggests that a claim against a governmental employee alleging mere negligent acts or omissions committed while the employee was acting within the line and scope of his or her employment should be considered a claim against the employee in his or her official capacity. Specifically, the nurses and the Hospital Board argued:
"Based on the reasoning of the Alabama Supreme Court in the line of cases above [including Allen ], when one is sued in an 'individual capacity' he is being sued for acts committed outside the line and scope of his employment, [for] wanton, willful or intentional misconduct; whereas when sued in an official capacity, the individual was acting in the line and scope of his employment."
Thus, the nurses and the Hospital Board argued, Allen demonstrates that the claims against the nurses stemming from allegedly negligent acts and omissions committed while they were acting within the line and scope of their employment are claims against them in their official capacities. I note that Wright does not directly address the quoted portion of Allen in his initial brief on appeal. See Soutullo v. Mobile Cty., 58 So.3d 733, 739 (Ala. 2010) ("[T]he failure of the appellant to discuss in the opening brief an issue on which the trial court might have relied as a basis for its judgment ... results in an affirmance of that judgment.").
Wright relies on Morrow v. Caldwell, 153 So.3d 764 (Ala. 2014). In that case, a *198 municipal employee who had performed an electrical inspection of a building was sued after a minor was electrocuted on the premises. Id. at 765-66. The trial court in Morrow denied the employee's request for a declaration that the damages cap set out in § 11-47-190, Ala. Code 1975, applied to the claims against him. Id. at 767. In affirming the trial court's judgment, this Court noted that the plaintiff alleged that the municipal employee acted recklessly, wantonly, maliciously, willfully, fraudulently, intentionally, in bad faith, beyond his authority, and under a mistaken interpretation of the law. Id. at 766. Thus, as in Allen, the employee's actions in Morrow significantly exceeded mere negligence committed while acting in the line and scope of employment. I do not read Morrow as holding that claims against employees of governmental entities alleging negligence committed while undisputedly acting within the line and scope of their duties as employees are not subject to the cap in § 11-93-2.
Wright relies heavily on Suttles v. Roy, 75 So.3d 90 (Ala. 2010). In that case, the Court held that the appellant, a municipal police officer, had not sufficiently supported his assertion on appeal that " 'it makes no sense at all' for the claims against [him] in his official capacity 'to be governed by the statutory damages cap' without the claims against him in his individual capacity also being subject to the cap." Id. at 98. The Court noted that the officer had not sufficiently developed an argument, or provided citations to authority, supporting his assertion that the trial court should have considered "the individual claim against [him] as, in substance, an official-capacity claim subject to the cap of § 11-93-2." Id. In a special concurrence on the denial of rehearing, Justice Shaw noted that the opinion on original submission had acknowledged "that no authority was cited for the proposition that § 11-93-2 capped any claims against [the officer] in his individual capacity at $100,000." Id. at 104. Thus, contrary to Wright's position in the present case, it appears that Suttles did not settle the issue.
I do not believe that Wright has demonstrated that the trial court erred in ruling that the claims against the nurses based on alleged negligent conduct committed within the line and scope of their employment are claims against them in their official capacities. Consequently, I would affirm the trial court's judgment.

See generally Ex parte McInnis, 820 So.2d 795, 798-99 (Ala. 2001) (observing the well settled principle that an " 'agent who personally participates, albeit in his or her capacity as such agent, in a tort is personally liable for the tort' " (quoting Sieber v. Campbell, 810 So.2d 641, 645 (Ala. 2001) )); Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc., 496 So.2d 774, 775 (Ala. 1986) ("In Alabama, the general rule is that officers or employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity."); Restatement (Third) of Agency § 7.01 cmt. b (2006) ("An agent whose conduct is tortious is subject to liability [personally] .... whether or not the agent acted ... within the scope of employment." "[This rule] is consistent with encouraging responsible conduct by individuals to impose individual liability on an agent for the agent's torts although the agent's conduct may also subject the principal to liability." (emphasis added)).

The Hospital Board and nurses' position in this case radically conflicts with these basic tenets. If that position were embraced, it would have major ramifications for heretofore settled law regarding the accountability of both public and private sector employees. The Hospital Board and nurses' position that all claims against individual governmental employees alleging negligent acts should be treated only as the "official" acts of their employer-merely because the acts were committed "in the line and scope of their employment"-would apply with equal force of logic to private-sector employment relationships and would unsettle centuries-old, bedrock principles of agency and employment law that allow injured parties not only to hold employers responsible for the acts of their employees occurring in the line and scope of employment, but also to separately hold the employees themselves personally liable for their tortious conduct when they have breached an individual duty to a third party.
Of course, not every action of a public employee that is detrimental to a third party represents the breach of some duty owed by the employee individually to that third party. (That is, every case is not an "appropriate case" for imposing individual-capacity liability.) For example, in Ravi, this Court's decision not to apply the $100,000 damages cap to a larger judgment against two nurses employed by a county hospital was predicated on the understanding that those nurses did owe a duty in their individual capacities to the plaintiff as their patient. Conversely, in Smitherman, the Court's decision to apply the $100,000 damages cap was predicated in part on the notion that the action against the county commissioners and the county engineer alleged breaches of duties they owed to the public generally and not duties specifically owed by each of them personally to an individual plaintiff injured as a result of poor road conditions. See also, e.g., Alabama Dep't of Corr. v. Thompson, 855 So.2d 1016, 1025 (Ala. 2003) (holding that "state correctional officers owe a general duty to the public, not a duty to a specific person, to maintain custody of inmates," while acknowledging that an individual duty "to a specific person may arise ... from a special relationship ... or ... special circumstances").
Obviously, the number of cases like Ravi in which an individual duty by a public employee, and thus an "individual-capacity" claim against the employee, are understood to exist is legion. Witness the hundreds of cases (i.e., both pre- and post-Ex parte Cranman, 792 So.2d 392 (Ala. 2000), dating back to 1901), which start with the premise of otherwise viable individual-capacity claims based on negligence committed by public employees or officials while acting within the line and scope of their official duties, but then proceed to apply nuanced standards, elements, and exceptions to determine which actions of which employees nonetheless qualify for complete "State-agent immunity." If there were no individual duty in such cases, and thus no otherwise viable individual-capacity claims, the appropriate remedy would have been simply to dismiss the individual-capacity claim against the employees for failure to state a claim upon which relief could be granted, see Rule 12(b)(6), Ala. R. Civ. P.; such defenses as immunity and statutory damages caps would be unnecessary and inapposite. Alternatively, if all such claims were bound to be treated simply as "official-capacity" claims, the whole of State-agent immunity law (comprising, as noted, hundreds of cases dating back over a century, and once discussed under the rubric of "discretionary-function immunity") would have been a wholly unnecessary exercise by this Court-§ 14 "sovereign immunity" simply would have applied in all such cases. See Ala. Const. 1901, § 14.

As noted in the last paragraph of note 2, if the plaintiff, as the "master of his complaint," has framed a claim seeking monetary relief from a government official or employee only in his individual capacity, and if our law simply does not recognize a duty owed by the official or employee personally to the plaintiff, the appropriate result is simply the dismissal of the claim under Rule 12(b)(6), Ala. R. Civ. P., for failure to state a claim upon which relief can be granted, rather than applying a damages cap our legislature has prescribed for an entirely different (i.e., official-capacity) type of claim.

See also id. at 101-02 (opinion modified on denial of reh'g)(Shaw, J., concurring specially)(rejecting the idea that Smitherman held that a public officer or employee who is engaged in the performance of his official duties " 'acts only within his official capacity and is only subject to suit in his official capacity' " (quoting application for rehearing) and noting that "the per se rule [recognized in Smitherman ] barring an individual-capacity action against a county commissioner exists by virtue of the county commissioner's role as a part of the governing body of the county").

The significance of recognizing that Morrow was sued based on allegedly "willful and wanton" conduct was that, if the plaintiff could prove her allegations, Morrow's conduct would not qualify for complete State-agent immunity (because it would fall within one of the two recognized exceptions to that immunity, see Ex parte Cranman, 792 So.2d at 405 ), thus necessitating an examination of whether that defendant could benefit in the alternative from the statutory damages cap at issue.

See generally Morrow, 153 So.3d at 772-73 (Murdock, J., concurring specially) (surveying statutory predecessors to §§ 11-47-190 and -191, Ala. Code 1975, and cases interpreting §§ 11-47-190 and -191 and their predecessors, dating back to 1907, and noting the authority of the legislature to modify the common-law doctrine of county and municipal immunity).

That said,
"State-agent immunity, as developed extensively in our caselaw, will apply in most cases involving municipal law-enforcement officials, particularly when they are acting within the line and scope of their duties; it will apply in many cases to non-law-enforcement municipal employees. In addition, there may be instances in which ... the nature of the employee's obligations to his or her municipal employer do not in fact also create a duty on the part of an employee to the third party [plaintiff]. See generally, e.g., Morrow v. Caldwell, 153 So.3d at 771 (Murdock, J., concurring specially) ('[T]he question before us in this permissive appeal is limited to whether, if an employee of a municipality is personally liable for a tort he or she commits in the course of his or her employment by a municipality, that liability can exceed the $100,000 cap referenced in § 11-47-190. Any such liability, however, would of course depend as a threshold matter on the existence of a duty that was personal to the employee (not merely a duty of his or her employer) and that ran to the plaintiff (and not merely from the employee to his or her employer')."
Allen, 164 So.3d at 581 (Murdock, J., concurring in the rationale in part and concurring in the result). No issue as to State-agent immunity is before us.

The cap involved in Allen is set out in § 11-47-190, Ala. Code 1975, and applies to claims against municipalities. Although § 11-47-190 applies to municipalities and § 11-93-2 applies to "governmental entities," the parties and amici curiae consider precedent construing and applying § 11-47-190 instructive in the present case.