The City of Birmingham ("the City") and William Gilchrist appeal from a judgment entered on a jury's verdict awarding damages to brothers William Brown and Henry Clayton (hereinafter referred to collectively as "the brothers"). We reverse and remand with directions.
 Facts
The brothers own 4.6 acres of property at the corner of Ostlin Street and Wenonah-Oxmoor Road in Jefferson County. The elevation of their property is lower than that of the property around it; approximately 1.48 acres of the property is situated in a floodplain. Additionally, "Little Shades Creek" runs across a portion of the property.
Alto Tarver and his wife own Tarver Consulting 
Development Company (hereinafter referred to collectively as "Tarver"). Tarver owned a larger tract of land on Ostlin Street across from the brothers' property; this tract of land sits at a much higher elevation than does the brothers' property. Tarver proposed to develop its property into a residential subdivision to be known as Pine Ridge Estates.
To develop the property, Tarver had to obtain a "civil construction permit" from the City, which required that Tarver comply with certain City regulations. Tarver hired Ronald K. Wilson, an engineer at Design Services, Inc., to design a drainage system for the Pine Ridge Estates subdivision that would comply with the City's regulations. Wilson designed a drainage system and, on September 26, 2000, submitted a letter to the Department of Planning, Engineering, and Permits for the City; that letter stated, in pertinent part:
 "I hereby certify that all drainage structures serving the proposed Pine Ridge [Estates] Subdivision were designed using sound engineering principles and practices. I further certify that all structures are sized to handle on-site storm runoff, as well as off-site runoff which drains through the site, based on a 10-year, 24-hour event as stipulated by the City of Birmingham.
 "As with all developments, post-development runoff exceeds pre-development runoff due to an increase in impervious area. However, existing natural watercourses and drainage structures downstream of this development possess adequate capacity to accommodate the increase in flow."
In January 2001, the City "accepted" Wilson's drainage-system design, approved Tarver's proposed subdivision plat for Pine Ridge Estates, and issued a civil construction permit for the subdivision.
The record indicates that water-drainage problems along Ostlin Street (where the brothers' property is located) existed before Tarver received approval from the City for the subdivision and began construction. Correspondence in January 2001 between residents of Sand Ridge Neighborhood, a neighborhood located in the vicinity of the brothers' property, documented those problems and addressed the issue of water drainage along Ostlin *Page 912 
Street. In a letter from Walter Jackson[1] to Willie Cammack, president of the Sand Ridge Neighborhood Association, dated January 3, 2001, Jackson wrote, in pertinent part:
 "As a result of our discussions, the [Birmingham] City Council, at its meeting on January 2, 2001, approved an appropriation of $60,000 to be used to improve existing storm water provisions along Ostlin Street, in addition to what is currently being done by Tarver Development Company (TDC), and to assist TDC with infrastructure improvements in that area: including curbs, gutters, and sidewalks. Hopefully, this will address the concerns of both Mr. Mrs. Harris and Mr. Brown."
This appropriation by the City was also addressed in the minutes of the January 8, 2001, meeting of the Sand Ridge Neighborhood Association. The minutes indicate that "[t]he [Birmingham] City Council . . . approved an appropriation of $60,000 to be used to improve existing storm water provisions along Ostlin Street, in addition to what is currently being done by Tarver . . . and to assist Tarver with infrastructure improvements along that area: including curbs, gutters, and sidewalks." The evidence in the record establishes that the Birmingham City Council appropriated $50,000, not $60,000, to Tarver in January 2001, for the purpose stated in Jackson's letter.
Tarver proceeded with the development of the Pine Ridge Estates subdivision. The drainage system for the subdivision was installed. The City then connected the drainage system to an existing drainage pipe located along a right-of-way and adjacent to the brothers' property.
The brothers sued Tarver, the City, and William Gilchrist, the director of the Department of Planning, Engineering, and Permits for the City, in his official and individual capacity. According to the complaint, as a result of the drainage system installed for the Pine Ridge Estates subdivision, surface water from other property was diverted onto the brothers' property, thereby flooding it. The complaint alleged trespass; nuisance; negligent design and construction of the drainage system; and willful and wanton design of the drainage system.
The City and Gilchrist filed motions for a judgment as a matter of law, arguing that the brothers' claims asserting intentional wrongdoing should be dismissed. The City argued that claims of intentional wrongdoing were not allowed against the City; Gilchrist argued that the brothers had presented no evidence indicating that he had engaged in any intentional wrong-doing. The City and Gilchrist also argued that the brothers had no evidence to indicate that the City, Gilchrist, or any other City employee had acted with neglect, carelessness, or unskillfulness in the design and construction of the drainage system along Ostlin Road.
Gilchrist also argued that he was entitled to "discretionary-function immunity" as to all claims. He argued that his job responsibilities required him "to run the Department of Planning, Engineering, Permits," and that "[t]he method and process of running such a department involved numerous discretionary functions — approving construction permits, managing employees, maintaining a department budget, supervising projects, etc." For these reasons, Gilchrist maintained that he was not liable to the brothers for the flooding of the brothers' property. The trial court *Page 913 
did not rule on these motions before the trial.
The case was tried on February 16, 2005. The brothers called Alto Tarver as their first witness. Alto Tarver testified that he installed the drainage system according to the City's regulations, that he relied on his engineer's design to install the drainage system, and that the engineer certified that the existing waterways were adequate to handle the post-development runoff.[2] Alto Tarver also identified several photographs as reflecting various views of the brothers' property; these photos revealed a great deal of water standing on the property. Alto Tarver testified that he had seen the brothers' property with large amounts of water standing on it both before and after the construction of the Pine Ridge Estates subdivision.
The brothers also called Randy Kemp, who works under the direction of Gilchrist as the "acting city engineer" in the Department of Planning, Engineering, and Permits. Kemp explained the process of obtaining a civil construction permit, stating:
 "[W]e don't allow any [construction] work in the city without issuing a permit for that work. In the case of infrastructure for a subdivision or commercial development or streets or a storm sewer and that kind of stuff, we issue a civil construction permit. We have criteria that we publish and ask the developers to comply with, such as, minimum pipe sizes. The City . . . has an 18-inch minimum pipe size [requirement]. The design calculations may not require that size of pipe but we require [it] for certain reasons for maintenance requirements and that kind of thing. We have standards that are different from other jurisdictions. We are checking for things like that."
Kemp testified that Wilson's letter to the Department of Planning, Engineering, and Permits certified that the drainage structures proposed for the development of Pine Ridge Estates complied with the City's requirements. Kemp stated that the City required such a letter from developers and/or their engineers before it would issue a civil construction permit. According to Kemp, Tarver's development complied with all of the City's regulations pertaining to drainage pipes, and he saw nothing negligent in the design of the drainage-sewer system used in the Pine Ridge Estates subdivision. Kemp explained that it is "pretty common" for the City to appropriate funds to assist developers in developing a subdivision.
Kemp testified that the brothers' property was located in a floodplain, as determined by the Federal Emergency Management Agency. Kemp stated that he had no knowledge as to whether the brothers' property flooded before Tarver began construction of the Pine Ridge Estates subdivision. Kemp, however, added that the presence of Little Shades Creek running across the brothers' property could be the cause of some of the flooding occurring on the property.
The brothers next called Cammack, who testified that he was familiar with the water problems on Ostlin Street both before and after the development of Pine Ridge Estates. Cammack testified that, to his knowledge, the brothers' property had not flooded until after Pine Ridge Estates was developed. Cammack testified that he was aware that the Birmingham City Council had appropriated funds to Tarver to make improvements on Ostlin Street. Cammack was unable to explain why the City would *Page 914 
have appropriated funds to "improve" water problems on Ostlin Street around the brothers' property before Tarver began his construction if the brothers' property was not already flooding before that construction began.
Brown testified that the brothers' property did not flood until Tarver developed his property into a subdivision. According to Brown, after Pine Ridge Estates was developed, water came across Ostlin Road to the extent of "washing the road away." Brown stated that even though he did not know exactly what the City or Tarver had done incorrectly, it was obvious that something had been incorrectly designed or installed or that someone had acted improperly, because the brothers' property was now flooding. Brown admitted, however, that he had no evidence, other than his testimony, indicating that Tarver or the City had acted negligently in installing or connecting the drainage pipes for the Pine Ridge Estates subdivision.
Brown stated that he was "upset" about the flooding of the property but that he had not sought medical treatment for his emotional upset. He also claimed that his damages totaled $148,321, based on his estimate of the diminution in value to the property. He acknowledged that he had not consulted with an expert to determine the amount of damages; he also acknowledged that he had not consulted with an engineer or other expert to determine if more water was flowing onto his property now than before construction of the Pine Ridge Estates subdivision and, if so, how much. Brown testified that the claim — that more water was coming onto his property after the construction of the subdivision than before — was based on "sight measurements."
At the conclusion of the brothers' case, the trial court entered judgments as a matter of law in favor of the City, Gilchrist, and Tarver as to all claims alleging intentional, willful, or wanton acts; as a result of this judgment, all of the brothers' claims seeking punitive damages were dismissed.[3]
The City, Gilchrist, and Tarver then put on their defenses on the remaining claims. The City and Gilchrist recalled Kemp as a witness. He testified that the City does not design or construct drainage systems for subdivisions but that, based on his experience and expertise as an engineer, he saw nothing negligent in the design of the drainage system that had been installed at Pine Ridge Estates.
Tarver then briefly took the stand as a defense witness. He testified that he did not design the drainage system that had been installed at Pine Ridge Estates but that, to his knowledge, the system met all the requirements and regulations of the City. At that point, all the defendants rested their case.
At the conclusion of all the evidence, the City, Gilchrist, and Tarver again moved for judgments as a matter of law. In their arguments, they pointed out that the trial court had entered a judgment as a matter of law as to all claims alleging intentional, willful, or wanton conduct. They asserted that the brothers' claim of negligent design and installation of the drainage system was the only count involving allegations of negligence and the only claim to survive the trial court's earlier judgment as a matter of law. The defendants then argued that the brothers had failed to present *Page 915 
evidence to support their claim of negligent design and installation; therefore, the defendants argued, they were entitled to a judgment as a matter of law as to that sole remaining count.
The trial court denied these motions, stating:
 "I'm going to deny your motion in regards to negligence and allow that count to go to the jury as well in regards to the trespass and regards to the nuisance, along with the facts as set forth and what is not listed as a count, but actually could be classified as a count, those first paragraphs of the complaint. Now, I will give you an exception to my ruling on that."[4]
The jury returned a verdict in favor of the brothers, awarding them a total of $100,000; the jury specified that Tarver was liable for $25,000 of that award, the City was liable for $37,500, and Gilchrist was liable for $37,500. The City and Gilchrist appeal.[5]
 Standard of Review
In Waddell Reed, Inc. v. United Investors LifeInsurance Co., 875 So.2d 1143, 1152 (Ala. 2003), this Court stated the standard of review applicable to a trial court's ruling on a motion for a judgment as a matter of law:
 "When reviewing a ruling on a motion for a JML [judgment as a matter of law], this Court uses the same standard the trial court used initially in deciding whether to grant or deny the motion for a JML. Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case to be submitted to the jury for a factual resolution. The nonmovant must have presented substantial evidence in order to withstand a motion for a JML. A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court's ruling."
(Citations omitted.)
 Analysis
Gilchrist and the City contend that the trial court erred in denying their motion for a judgment as a matter of law because, they say, they were entitled to immunity from liability for the brothers' claims not based on intentional, willful, or wanton conduct.
Gilchrist claims immunity by virtue of being an employee of the City. In Ex parte Cranman, 792 So.2d 392, 405
(Ala. 2000), this Court stated:
 "A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's *Page 916 
 "(1) formulating plans, policies, or designs; or
 "(2) exercising his or her judgment in the administration of a department or agency of government. . . .
 ". . . .
 "(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner. . . ."
792 So.2d at 405. Immunity applies to employees of municipalities in the same manner that immunity applies to employees of the State. See Ex parte City ofBirmingham, 624 So.2d 1018 (Ala. 1993). Ex parteCranman, supra, did nothing to alter this application.
The evidence established that Gilchrist was the director of the Department of Planning, Engineering, and Permits for the City, the department responsible for approving the civil construction permit for the Pine Ridge Estates subdivision, and that Gilchrist, in his capacity as director, wrote Brown a letter, a year or two after the Pine Ridge Estates subdivision had been completed, addressing the brothers' complaints about the flooding of their property. Gilchrist established his prima facie right to immunity.
The brothers offered no evidence to properly rebut Gilchrist's right to immunity. The brothers' evidence does not establish that Gilchrist had any personal involvement in designing or installing the drainage system for Pine Ridge Estates or that Gilchrist had any personal involvement in issuing the civil construction permit to Tarver for the subdivision other than by virtue of his employment in the City's department responsible for issuing such permits. Because the evidence establishes that Gilchrist is entitled to immunity pursuant to Ex parte Cranman, the trial court erred in denying Gilchrist's motion for a judgment as a matter of law on the issue of immunity. Therefore, we reverse the judgment entered against Gilchrist and remand this case with directions that the trial court enter a judgment as matter of law in Gilchrist's favor.
We next address the judgment entered in favor of the brothers against the City. Section 11-47-190, Ala. Code 1975, addresses municipal liability. See City of Prattville v. Corley,892 So.2d 845 (Ala. 2003) (residents' claims of negligence, trespass, and nuisance asserted against the City of Prattville, arising from flooding of the City's storm drains, fell within the scope of § 11-47-190, Ala. Code 1975). Section 11-14-190 provides:
 "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, or unless the said injury or wrong was done or suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body and whenever the city or town shall be made liable to an action for damages by reason of the unauthorized or wrongful acts or negligence, carelessness or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account *Page 917 
by the party so injured. However, no recovery may be had under any judgment or combination of judgments, whether direct or by way of indemnity under Section 11-47-24, or otherwise, arising out of a single occurrence, against a municipality, and/or any officer or officers, or employee or employees, or agents thereof, in excess of a total $100,000 per injured person up to a maximum of $300,000 per single occurrence, the limits set out in the provisions of Section 11-93-2 notwithstanding."
Thus, to establish liability on the part of the City, under § 11-47-190, Ala. Code 1975, the brothers had to present evidence indicating that some agent, employee, or officer of the City had acted neglectfully, unskillfully, or carelessly.[6]
According to the evidence, the drainage system for the Pine Ridge Estates subdivision submitted by Tarver for the City's approval met all the requirements for a civil construction permit as established by the City's Department of Planning, Engineering, and Permits. The brothers did not offer any expert testimony to challenge the adequacy of the requirements established by that department, and they did not establish that anyone employed with or acting on behalf of the City acted with neglect, carelessness, or unskillfulness in reviewing the engineer's certification of the proposed drainage system for Pine Ridge Estates, in accepting the engineer's certification, or in issuing the civil construction permit in reliance on the certification submitted by Tarver's engineer. At most, the brothers' evidence established that the surface water from Tarver's property was caused to run onto the brothers' property, causing flooding. This evidence, however, does not involve a showing that the "flooding" of the brothers' property was "done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee" of the City. See Sargentv. Lambert Constr. Co., 378 So.2d 1153 (Ala.Civ.App. 1979). Because the brothers did not establish that their damage or injuries were suffered as a result of some neglect, carelessness, or unskillfulness of an agent, officer, or employee of the City, they did not establish a basis for recovery against the City.
Therefore, we reverse the judgment entered in the brothers' favor against the City and remand the case for the trial court to enter a judgment as a matter of law in favor of the City.
Because of our resolution of the foregoing issues, we need not address the other issues raised on appeal by the City and Gilchrist.
 Conclusion
The trial court erred in denying the motion for a judgment as a matter of law filed by the City and Gilchrist. We reverse the judgment of the trial court and remand this cause to the trial court with directions that it enter a judgment in favor of the City and Gilchrist.
REVERSED AND REMANDED WITH DIRECTIONS.
COBB, C.J., and SEE, LYONS, WOODALL, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
[1] It appears that Jackson is involved with the Birmingham City Council and that he acted as a liaison between the city council and the Sand Ridge Neighborhood Association.
[2] The brothers did not name the engineer hired by Tarver as a defendant in this action.
[3] The trial court acknowledged that the brothers could not have recovered any damages from the City for willful or wanton or intentional conduct "of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his duty," pursuant to § 11-47-190, Ala. Code 1975.
[4] It appears that the trial court recognized that the complaint and the evidence set forth the common-law claim recognized in Sargent v. Lambert Construction Co.,378 So.2d 1153, 1155 (Ala.Civ.App. 1979)("'An upper proprietor who collects surface water into a channel and casts it upon property of a lower proprietor to his damage, when if it were not so collected the water would be scattered and diffused, is liable for the damage though the property is located within an incorporated town or city.'").
[5] Tarver did not appeal the judgment against it; therefore, we do not address that judgment.
[6] The brothers do not argue that the injury was caused by the City's failure "to remedy some defect in the streets, alleys, public ways or buildings"; therefore, we do not apply this portion of § 11-47-190. *Page 918