BRYAN, Justice.
Teresa Gilland petitions this Court for a writ of mandamus directing the Walker Circuit Court ("the trial court") to grant her motion to dismiss the claims filed against her by Diane K. McCain on the basis of State-agent immunity. For the reasons set forth herein, we grant the petition and issue the writ.
Facts and Procedural History
On May 29, 2015, McCain, a resident of Jasper, was attacked and bitten by a German Shepherd dog owned by her neighbor, Robert Barton. On January 4, 2017, McCain sued Barton; the City of Jasper ("the City"); Sonny Posey, then mayor of the City; Joe Matthews, director of the City's Public Works Department; Russell Smallwood, superintendent of the City's Street Department; and Gilland, an animal-control officer employed by the City. McCain's complaint set forth the following factual allegations:
"11. Barton is a former police officer of the City of Jasper and was the owner of a German Shepherd dog (hereinafter 'the Dog') that attacked [McCain] and her pet on the date complained of herein.
"12. Barton regularly kept [the Dog] outside tied to the back patio of his home, unmuzzled, and without a kennel or perimeter fence to prevent his escape.
"13. The chain used by Barton, however, was inadequate to keep the [D]og tethered and secured. The Dog would frequently escape running unleashed and unattended throughout the streets terrorizing the neighborhood.
"14. At all times pertinent, McCain lived on the same street as Barton and was Barton's next door neighbor.
"15. For years McCain and her neighbors would call the City of Jasper and complain about [the Dog] running wild through the streets terrorizing and frightening them by attempting to attack them and their pets.
"16. McCain and her neighbors lived in constant fear of [the Dog], making it nearly impossible for them to safely leave their homes and enjoy being outside without having to be on a constant lookout for the Dog.
"17. When the Dog was loose, McCain and her neighbors would call the City of Jasper for help. The City would come out and capture the [D]og, only to release and return the [D]og to Barton.
"18. On occasion, the [D]og attempted to bite the animal control worker, when she turned her back on the [D]og nipping her on the hand.
"19. The [D]og also attacked McCain's [other] neighbor, on two occasions. On *979 the second occasion the [D]og jumped on the neighbor's back, clawing and scratching her while trying to maul and attack her neighbor's dog.
"20. Barton was aware [the Dog] was known to frequently escape, run-at-large, and terrorize his neighbors.
"21. Barton was told by Animal Control that he had to keep [the Dog] tethered and secure or it will hurt someone.
"22. Yet Barton failed to heed their warnings and failed to take sufficient action to contain and confine [the Dog] or protect McCain and her neighbors from being hurt by the [D]og.
"23. For at least two years, McCain repeatedly called the City of Jasper and reported [the Dog] had escaped and was terrorizing her, her neighbors, and their pets.
"24. McCain lived in constant fear of [the Dog], for her own safety and that of her beloved pet dog named Skipper.
"25. McCain could no longer enjoy going outside and taking walks with Skipper without being filled with intense fear at the first sight of [the Dog] charging after her and Skipper, causing her to race back inside for safety.
"26. One occasion while McCain was walking her dog, Skipper, in her back yard, [the Dog] pounced on Skipper, biting him until he bled before letting go.
"27. McCain reported the incident to the City of Jasper and was told that until [the Dog] bit a person they would do nothing to help.
"28. During the spring of 2015, after [the Dog] had escaped several times, Theresa Gilland, the City of Jasper Animal Control Officer, responded to the area and captured the [D]og.
"29. After capturing the [D]og, Gilland's supervisor, Russell Smallwood, told Gilland not to impound [the Dog] because they had no space at the shelter for biting and dangerous dogs.
"30. Gilland told Smallwood that the dog needed to be taken in and put down because it was dangerous and vicious and was going to hurt someone.
"31. Despite this warning by Gilland, Smallwood insisted that Gilland release the Dog.
"32. Having no authority to disobey Smallwood's demand, Gilland released the Dog.
"33. Even though Gilland appeared afraid of [the Dog], she informed McCain that she was instructed to turn the Dog loose and there was nothing she could do to help.
"34. Shortly afterwards, on May 29, 2015, while walking Skipper on a leash in her own front yard, [the Dog] had escaped again and came barreling onto McCain's property charging at her and her dog Skipper. [The Dog] viciously attacked Skipper, biting and shaking him with its powerful and deadly jaws.
"35. As McCain watched and listened to her pet and companion scream and yelp from this vicious attack, McCain pulled the leash with all her might to free Skipper from the grip of [the Dog's] mashing teeth when suddenly [the Dog] turned and attacked her.
"36. The Dog's teeth sunk into the flesh of McCain's upper arm. The Dog bit and thrashed McCain like [a] rag doll and forcing her to the ground and into a drainage ditch.
"37. McCain was in excruciating pain as she watched [the Dog] rip and tear the flesh from her arm.
"38. Despite being in shock from this vicious attack, McCain was somehow able to reach into her pocket with her other arm and spray [the Dog] with mace.
*980 "39. After what seemed like an eternity, [the Dog] let go of McCain's threshed and ragged [sic] and ran-off.
"40. As McCain lay there trying to comfort her whimpering and dying pet and companion, she herself screamed and cried in agony and pain until being overcome and losing consciousness.
"41. Upon being revived, McCain found herself being transported by ambulance first to Walker Baptist Hospital and then to the UAB Trauma Center. She knew that her dog was dead, although no one told her.
"42. As a result of the Dog's attack, McCain ... remained hospitalized for weeks and underwent multiple reconstructive surgeries and physical therapy to repair the extensive injuries to her arm.
"43. McCain is permanently scarred, disfigured, and still suffers from pain due to the damage which serves as a constant reminder of the horror she experienced.
"44. As for McCain's pet and companion, Skipper, [the Dog] killed Skipper as a result of this brutal attack, adding unmeasurably to the suffering and misery inflicted upon ... McCain.
"45. When the police responded to the scene, they followed the [D]og back to Barton's house and shot it, dead when the [D]og charged at one of the police officers."
Based on those allegations, McCain asserted negligence and wantonness claims against Gilland for Gilland's alleged breach of "a duty to ... enforce animal control policies designed to protect the public from dogs running at large."[1]
On June 12, 2017, Gilland, asserting State-agent immunity, filed a motion to dismiss McCain's claims against her. According to Gilland, she is entitled to State-agent immunity because, she said, the allegations in McCain's complaint indicate that, at all pertinent times, Gilland was acting in compliance with the City's Code of Ordinances ("the Code") and with the instructions Smallwood, her supervisor, gave her. Specifically, Gilland relied on Chapter 4, Article III, of the Code, which prescribes, among other duties, the duties imposed on the City's animal-control officers with respect to dogs found to be unlawfully at-large within the municipal limits of the City. According to Gilland, § 4-48 of the Code provides that, "when a dog running at large is seized by an animal control officer, the dog may be returned to the owner 'in the discretion of the officer' based on 'consideration of the facts surrounding the running at large and the available space within the city's animal shelter.' " Thus, Gilland argued, the allegations in McCain's complaint indicate that Gilland was acting in compliance with both § 4-48 and her supervisor's instructions when she returned Barton's dog, and, as a result, Gilland argued, she is entitled to State-agent immunity under Ex parte Cranman, 792 So.2d 392 (Ala. 2000).
*981 In response to Gilland's motion, McCain argued that Gilland was not entitled to State-agent immunity because, McCain said, § 4-23 of the Code required Gilland to impound Barton's dog after seizing it on May 29, 2015, and, McCain alleged, in failing to impound Barton's dog, Gilland was acting willfully, maliciously, fraudulently, in bad faith, or beyond her authority. See Cranman, 792 So.2d at 405. In reply to McCain's response, Gilland argued that McCain had "misread the relevant ordinances" and contended that, although the Code requires an animal-control officer to seize any dog found to be unlawfully at-large within the municipal limits of the City, the Code also "plainly grants the animal control officer a great degree of discretion in determining whether a dog -- even a 'vicious' one -- should be ... impounded, confined, or returned to its owner." Gilland also argued that McCain's allegation that Gilland had acted willfully, maliciously, fraudulently, in bad faith, or beyond her authority was "belied by the very allegations of [McCain's] complaint."
On February 28, 2018, the trial court, without stating its reasons for doing so, denied Gilland's motion to dismiss. Gilland subsequently petitioned this Court for a writ of mandamus.
Standard of Review
" 'A writ of mandamus is a
" ' " 'drastic and extraordinary writ that will be issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.' "
" ' Ex parte Wood, 852 So.2d 705 (Ala. 2002) (quoting Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala. 1993) ). A petition for a writ of mandamus "is an appropriate means for seeking review of an order denying a claim of immunity." Ex parte Butts, 775 So.2d 173, 176 (Ala. 2000) ....
" 'In reviewing the denial of a motion to dismiss by means of a mandamus petition, we do not change our standard of review. [ Butts, 775 So.2d at 176 ]; see also Wood, 852 So.2d at 709 (review of a denial of a summary-judgment motion grounded on a claim of immunity by means of a petition for a writ of mandamus does not change the applicable standard of review). Under Rule 12(b)(6), Ala. R. Civ. P., a motion to dismiss is proper when it is clear that the plaintiff cannot prove any set of circumstances upon which relief can be granted. Cook v. Lloyd Noland Found., Inc., 825 So.2d 83, 89 (Ala. 2001). " 'In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [she] may possibly prevail.' " Id. (quoting Nance v. Matthews, 622 So.2d 297, 299 (Ala. 1993) ). We construe all doubts regarding the sufficiency of the complaint in favor of the plaintiff. Butts, 775 So.2d at 177.'
" Ex parte Haralson, 853 So.2d 928, 931 (Ala. 2003) (footnote omitted)."
Atkinson v. State, 986 So.2d 408, 410 (Ala. 2007).
Discussion
As a threshold matter, we must address McCain's motion to dismiss Gilland's mandamus petition as moot. In support of her motion, McCain included a copy of an amended complaint she filed on July 2, 2018. McCain argues that her amended complaint supersedes her original complaint as the operative pleading *982 and that "the questions of law raised by Gilland are pertinent only to the original complaint ... and are no longer relevant to this proceeding." Thus, McCain argues, Gilland's petition is moot and is due to be dismissed.
However, the amended complaint was not before the trial court when it ruled on Gilland's motion to dismiss. Rather, McCain filed her amended complaint more than four months after the trial court denied Gilland's motion to dismiss and more than two months after Gilland filed her petition in this Court. Thus, the amended complaint is not before this Court for its consideration. See Ex parte Cincinnati Ins. Co., 51 So.3d 298, 311 n. 6 (Ala. 2010) ("We note that [the respondent], in his answer, relies on an amended complaint that was served after the entry of the trial court's August 26, 2009, order and after [the petitioner] filed its petition for a writ of mandamus in this Court. Accordingly, the amended complaint is not before us for consideration, and, in view of our issuance of the writ, we do not consider it."); and Ex parte Interstate Freight USA, Inc., 213 So.3d 560, 572 (Ala. 2016) (stating, on petition for a writ of mandamus, that, "[b]ecause the petitioners' answer and counterclaim were not before the trial court at the time it ruled on the motion for a change of venue, we will not consider the answer and counterclaim or any argument based on those pleadings" (emphasis added) ). As a result, we are concerned only with whether Gilland was entitled to a dismissal based on the allegations in McCain's original complaint, i.e., whether Gilland was entitled to a dismissal based on the pleadings that were before the trial court when it ruled on Gilland's motion to dismiss. Accordingly, we deny McCain's motion to dismiss the mandamus petition and proceed to discuss the merits of the petition.
Gilland argues, as she did below, that she has a clear legal right to dismissal based on State-agent immunity. The test for State-agent immunity, established by this Court in Ex parte Cranman, supra, a plurality opinion, and subsequently adopted by this Court in Ex parte Butts, 775 So.2d 173, 178 (Ala. 2000), provides, in pertinent part:
"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
"....
"(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner ....
"....
"Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
"....
"(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."
792 So.2d at 405. "Immunity applies to employees of municipalities in the same manner that immunity applies to employees of the State. See Ex parte City of Birmingham, 624 So.2d 1018 (Ala. 1993). Ex parte Cranman, supra, did nothing to alter this application." City of Birmingham v. Brown, 969 So.2d 910, 916 (Ala. 2007).
"This Court has established a 'burden-shifting' process when a party raises the defense of State-agent immunity.
*983 Giambrone v. Douglas, 874 So.2d 1046, 1052 (Ala. 2003). In order to claim State-agent immunity, a State agent bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity. Giambrone, 874 So.2d at 1052 ; Ex parte Wood, 852 So.2d 705, 709 (Ala. 2002). If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. Giambrone, 874 So.2d at 1052 ; Wood, 852 So.2d at 709 ; Ex parte Davis, 721 So.2d 685, 689 (Ala. 1998)."
Ex parte Estate of Reynolds, 946 So.2d 450, 452 (Ala. 2006). Thus, our first inquiry is whether Gilland made a prima facie showing that McCain's claims arise from a function that would entitle Gilland to State-agent immunity. See Ex parte Brown, 182 So.3d 495, 504 (Ala. 2015) ("Officer Brown made a prima facie showing that he qualified for State-agent immunity, thus shifting the burden to Cupps to demonstrate that Officer Brown's conduct fell within one of the two exceptions to State-agent immunity.").
As noted, Gilland argued in her motion to dismiss that the allegations in McCain's complaint indicate that, at all pertinent times, Gilland was discharging the duties imposed on her by § 4-48 of the Code and that she was doing so in the manner prescribed therein. Thus, Gilland argued, she made a prima facie showing that she is entitled to State-agent immunity under the third Cranman category -- "discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner." Cranman, 792 So.2d at 405. We agree that Gilland satisfied her burden of making a prima facie showing that she qualifies for State-agent immunity.
Section 4-48 of the Code provides, in pertinent part:
"(a) Any dog found unlawfully to be at large within the City of Jasper is hereby declared to be in violation, and shall be seized by any police or animal control officer, and shall be cared for in a humane manner for a period of not less than seven (7) calendar days; provided, however, that in the discretion of the officer, and in consideration of the facts surrounding the running at large and the available space within the city's animal shelter, or the animal shelter used by the city, the officer shall have the discretion, if feasible, to return the dog to the owner or person in charge of the dog, and shall issue a citation or, at a minimum, a warning, for the violation of the prohibition against permitting said dog to run at large."
(Emphasis added.)
Thus, § 4-48 requires an animal-control officer to seize any dog found to be unlawfully at-large within the municipal limits of the City and dictates that the officer, subsequent to such a seizure, impound the dog at least seven days unless the officer, in his or her discretion, determines that the circumstances and the lack of space at the City's animal shelter warrant returning the dog to its owner. Should the officer elect to return the dog to its owner, § 4-48 requires the officer to issue the dog's owner a citation or a warning. Accordingly, § 4-48 imposes a duty on an animal-control officer of the City to seize a dog found to be unlawfully at-large within the municipal limits of the City and "prescribes the manner," Cranman, supra, in which the officer is to proceed subsequent to such a seizure, *984 i.e., the officer is either to impound the dog for at least seven days or to return the dog to its owner with a citation or warning.
In her complaint, McCain alleged that Gilland responded to a report that Barton's dog was at-large and subsequently seized the dog; that Smallwood, Gilland's supervisor, informed Gilland that the City lacked available space to impound the dog; that Gilland informed Smallwood that the dog "needed to be taken in and put down because it was dangerous and vicious and was going to hurt someone"; that Smallwood, despite Gilland's warning, "insisted" that Gilland return the dog to Barton; that Gilland, "[h]aving no authority to disobey Smallwood's demand," returned the dog to Barton; and that Gilland informed McCain that Gilland had been "instructed" to return the dog to Barton and that "there was nothing she could do to help." Thus, McCain's allegations -- which, at this point in the proceedings, must be accepted as true, Ex parte Austal USA, LLC, 233 So.3d 975, 981 (Ala. 2017) -- indicate that Gilland seized Barton's dog as she was required to do by § 4-48 and returned the dog to Barton -- an option authorized by § 4-48 -- after her supervisor instructed her to do so based on the lack of space at the City's animal shelter. That is to say, the factual allegations of McCain's complaint indicate that Gilland was discharging the duties imposed on her by § 4-48 and was doing so both in a manner prescribed therein and in a manner consistent with her supervisor's instructions.[2] Therefore, Gilland satisfied her burden of making a prima facie showing that she qualifies for State-agent immunity under the third Cranman category. Estate of Reynolds, supra. As a result, the burden then shifted to McCain to demonstrate that, in failing to impound Barton's dog, Gilland acted willfully, maliciously, fraudulently, in bad faith, or beyond her authority. Id.
In response to Gilland's motion to dismiss, McCain argued that Gilland
"acted willfully, maliciously, fraudulently, in bad faith, beyond ... her authority, or under a mistaken interpretation of the law when she failed to enforce the City's rules and regulations designed to identify, confine, and protect McCain from vicious dogs running at large. Had Gilland followed protocol McCain would not have been injured."
Regarding the allegation that Gilland "failed to enforce the City's rules and regulations," McCain argued that Gilland had no discretion to return Barton's dog subsequent to the May 29, 2015, seizure because, McCain said, the Code required Gilland to impound Barton's dog. That is to say, McCain alleged that Gilland acted beyond her authority by failing to impound Barton's dog and that she did so willfully, maliciously, fraudulently, or in bad faith. See Ex parte Watson, 37 So.3d 752, 762 (Ala. 2009) (holding that a State agent acted beyond her authority when she failed to comply with certain requirements, thus "defeat[ing] her claim of State-agent immunity").
As to the allegation that Gilland acted beyond her authority by failing to impound Barton's dog, McCain's complaint does not identify any ordinance in the Code that unconditionally required Gilland to impound Barton's dog, and, as noted, § 4-48 authorized Gilland to return Barton's dog. In response to Gilland's motion to dismiss, McCain argued that her complaint alleged that Barton's dog was a "vicious dog" as *985 defined by § 4-61 of the Code and that, as a result, Gilland was required to impound the dog pursuant to § 4-23 of the Code, which provides:
"Each person owning or having charge of any cat, or exotic animal as defined by state statute, that is vicious or dangerous shall keep said animal confined to the premises of the owner or keeper. Any such animals that are known to be vicious and mean shall be picked up by the city dog catcher if found upon the streets of the city and shall be confined at the pound in accordance with the provisions of this article."
(Emphasis added.) However, in addition to the fact that the plain language of § 4-23 provides that it is applicable only to "cat[s]" and "exotic animal[s]," § 4-23 is included in the Code in Chapter 4, Article II, which governs cats and exotic animals, not in Article III, which governs dogs. Thus, because § 4-23 is not applicable to dogs -- vicious or otherwise -- it imposed no duty on Gilland to impound Barton's dog. Accordingly, McCain failed to carry her burden of demonstrating that Gilland had a mandatory duty to impound Barton's dog and that she therefore acted beyond her authority by failing to do so.
As to the allegation that Gilland acted willfully, maliciously, fraudulently, or in bad faith by not impounding Barton's dog, McCain's complaint does not set forth any factual allegations that could even plausibly support such a conclusion. In fact, far from exhibiting that Gilland acted willfully, maliciously, fraudulently, or in bad faith, the factual allegations of McCain's complaint, which, again, must be accepted as true, Austal USA, supra, indicate that Gilland acted conscientiously by attempting to persuade her supervisor of the need to impound or exterminate Barton's dog and that she did everything in her power, short of disobeying her supervisor's instructions, to avoid returning the dog to Barton. Thus, as Gilland noted, McCain's factual allegations actually belie the conclusion that Gilland acted willfully, maliciously, fraudulently, or in bad faith and, instead, support Gilland's contention that she is entitled to State-agent immunity. Accordingly, McCain failed to carry her burden of demonstrating that Gilland "acted 'willfully, maliciously, fraudulently, [or] in bad faith' so as to remove [her] from the umbrella of State-agent immunity afforded [her] under Ex parte Cranman."[3] Ex parte Harris, 216 So.3d 1201, 1214 (Ala. 2016).
We recognize that
"a motion to dismiss is typically not the appropriate vehicle by which to assert qualified immunity or State-agent immunity and that normally the determination as to the existence of such a defense should be reserved until the summary-judgment stage, following appropriate discovery. ' "[I]t is the rare case involving the defense of [State-agent] immunity that would be properly disposed of by a dismissal pursuant to Rule 12(b)(6), [Ala. R. Civ. P.]." ' Ex parte Butts, 775 So.2d [173,] 177 [ (Ala. 2000) ], quoting *986 Patton v. Black, 646 So.2d 8, 10 (Ala. 1994) (quoting earlier cases)."
Ex parte Alabama Dep't of Mental Health & Retardation, 837 So.2d 808, 813-14 (Ala. 2002) (emphasis added). However, although such cases are rare, they do exist. See, e.g., Ex parte Alabama Dep't of Forensic Sci., 709 So.2d 455 (Ala. 1997) (granting a petitioner mandamus relief from the denial of his motion to dismiss based on qualified immunity, the pre- Cranman term for State-agent immunity, see Ryan v. Hayes, 831 So.2d 21, 27 (Ala. 2002) ); and Nance v. Matthews, 622 So.2d 297 (Ala. 1993) (affirming the dismissal of a complaint based on qualified immunity). Here, the allegations of McCain's complaint compel us to conclude that this is one of those rare cases. Gilland made a prima facie showing that her actions arose from a function that would entitle her to State-agent immunity under the third Cranman category. Estate of Reynolds, supra. In response, McCain failed to provide any factual basis for even plausibly concluding that Gilland acted willfully, maliciously, fraudulently, in bad faith, or beyond her authority. Id. Thus, even when the allegations in McCain's complaint are construed in her favor, as they must be, Atkinson, supra, McCain can prove no set of circumstances that would entitle her to relief against Gilland. Id. Accordingly, the specific allegations in this case require that Gilland's motion to dismiss based on State-agent immunity be granted.
Conclusion
Gilland has demonstrated that she has a clear legal right to the dismissal of McCain's claims against her based on State-agent immunity. We therefore grant the petition and issue the writ directing the trial court to dismiss Gilland from the case.
PETITION GRANTED; WRIT ISSUED.
Stuart, C.J., and Bolin, Parker, Shaw, Main, Wise, Sellers, and Mendheim, JJ., concur.

We note that McCain sued Gilland in her individual capacity and her official capacity. However, "claims that are brought against municipal employees in their official capacity are ..., as a matter of law, claims against the municipality." Morrow v. Caldwell, 153 So.3d 764, 771 (Ala. 2014). See also Dickinson v. City of Huntsville, 822 So.2d 411, 415 (Ala. 2001) ("[T]o sue the mayor in her official capacity is simply another way of suing the City. Therefore, the trial court did not err in substituting the City for Mayor Spencer, the original defendant."). Thus, McCain's claims against Gilland in Gilland's official capacity are merely claims against the City, which is already a defendant but is not a party to this mandamus petition. Accordingly, we are concerned in this opinion only with whether Gilland is entitled to immunity in her individual capacity.

McCain's complaint does not allege, and McCain has not argued, that Gilland failed to issue Barton a warning as required by § 4-48. In fact, the complaint concedes that "Animal Control" had warned Barton in the past "to keep his dog tethered and secure or it will hurt someone."

Although we are required to accept McCain's factual allegations as true at this stage of the proceedings, we are not required to accept her conclusory allegations that Gilland acted willfully, maliciously, fraudulently, or in bad faith. Rather, to survive Gilland's motion to dismiss, McCain was required to plead facts that would support those conclusory allegations. See Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) (noting, on review of the dismissal of a complaint for failure to state a claim, that "[t]he plaintiff's factual allegations are accepted as true" but that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal").